Submitted June 28, 2011, affirmed May 16, 2012

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DENNIS BRIAN HUTTON,
*Defendant-Appellant.*

Columbia County Circuit Court
096061; A142745

279 P3d 240

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

The victim, defendant's former girlfriend, reported to police that defendant hit her in the mouth and burned her with a cigarette during an argument in a trailer. Defendant was then charged with two counts of fourth-degree assault and two counts of harassment. Before trial, the state sought a ruling on the admissibility of evidence that defendant had given the victim a "fat lip" during a previous argument in the trailer. Over defendant's objection, the court ruled that the victim could testify about that prior assault, which she did, and defendant was convicted of fourth-degree assault and harassment. He now appeals, arguing that the trial court's ruling on the motion *in limine* was error, and that evidence of his prior bad act was inadmissible under OEC 404(3). We affirm.[1]

On Valentine's Day in February 2009, defendant and the victim, Feinstein, were "hanging out together" and drinking alcohol in a trailer. Defendant and Feinstein had been in a romantic relationship in the past but, as of that night, were not "officially together."

From there, their stories diverge. According to Feinstein, they fell asleep in the bedroom of the trailer. She awoke a short time later to use the bathroom and get something to drink. When she returned to the bedroom, defendant was sitting in the bed and smoking a cigarette. They proceeded to argue about the trailer and other "touchy" subjects. Defendant became angry and hit her in the mouth. She took a step back, and defendant reached out, put his cigarette on her chest, and used it to push her back. Feinstein then went to the living room of the trailer, and defendant stayed in the bedroom until he left approximately an hour and a half later. The following day, her lip was swollen and sore, and she felt a burning sensation on her chest. She called the police and reported that defendant had injured her. Defendant was charged with two counts of fourth-degree assault (one count for striking Feinstein and another for burning her) and two counts of harassment (again, one count for striking Feinstein

---

[1] Defendant also raises an unpreserved challenge to the trial court's award of restitution. We reject that assignment of error without discussion.

and another for burning her), and he proceeded to trial on those charges.

During his opening statement, defendant's counsel advanced a different version of the events, arguing that no assault or harassment had occurred. He stated, "My client did not strike Miss Feinstein, he did not put out a cigarette on her, and that's what we're going to prove here at the end of the day." Defendant's theory, which he later testified in support of, was that he left the trailer around 10:30 p.m. and returned to find Feinstein passed out drunk on the floor, at which point she told him that she had burned herself.

After defendant's opening statement, the prosecutor moved *in limine* for a ruling on the admissibility of evidence of prior misconduct—namely, evidence that, in 2007, defendant had hit Feinstein in the lip during an argument in the trailer, causing her lip to swell. Defendant had been indicted in a separate case on charges arising out of that earlier incident but still had not yet been tried on those charges by the time of trial in this case.

The prosecutor argued that evidence of the prior assault was admissible under OEC 404(3) because it was relevant for "showing intent in this case." The prosecutor framed her argument in terms of the five-part test set forth in *State v. Johns*, 301 Or 535, 557-59, 725 P2d 312 (1986), for determining "whether the probative value of the evidence exceeds its prejudicial nature."[2] The prosecutor, focusing on the "first prong" of that test, argued that evidence of the prior assault was necessary "to show the jury that this incident was not some odd accident—it sounds as though there's a defense that this did not—he did not commit the action on it but there's another explanation." Relying on *State v. Wieland*, 131 Or App 582, 887 P2d 368 (1994), the prosecutor argued that, as a matter of logic, "the more often that an unusual event occurs, such as getting a fat lip or having injuries around the neck area, the less likely it is that that occurrence

---

[2] Those five factors are (1) the proponent's need for the evidence; (2) the certainty that the other crime was committed and that defendant was the actor; (3) the strength or weakness of the evidence; (4) its inflammatory effect on the jury; and (5) how time-consuming and distracting proof of the other crime will be. *Johns*, 301 Or at 557-58.

is accidental." *See id.* at 589 ("As a matter of logic, the more often an unusual event occurs, the less likely it is that the occurrence is accidental. Because this evidence [of a prior arson] has a tendency to make the fact that the 1986 fires were caused by arson more likely, it is relevant. OEC 401."). The prosecutor further argued that the evidence was relevant to prove defendant's mental state on the harassment charges. She explained that the context of the testimony by Feinstein "would be when we're discussing the victim's state of mind in reaction to what was happening, why did she react the way she did, because she had experienced this before," and also argued that prior assaults by defendant against Feinstein "are actually going to go to show his intent that's required on the Harassment charges." The prosecutor, thus, was suggesting that because defendant had engaged in a pattern of abuse with Feinstein and had punched her in the mouth in the past, he therefore knew how she would react to that type of abuse.

Defendant, meanwhile, argued that "the defense is not that it was somehow accidental, it's that it did not happen, in fact[.]" Defendant directed the trial court to "what was said here in opening," when defendant's counsel stated that defendant did not strike Feinstein, did not put out a cigarette on her, and "that's what we're going to prove here at the end of the day." Thus, defendant argued, the prior assault was being offered only to show that defendant had a propensity to abuse Feinstein—an impermissible and highly prejudicial purpose.

The trial court granted the state's motion *in limine*, explaining:

"[I] believe that based on the *Johns* test it—this evidence does fall within those parameters. So I would be concerned if there were other evidence that was not this specific incident date because the second prong of clearly proven may not be of—whatever else has happened may not rise to that level.

"So I think that the evidence of the prior incident needs to be limited to this one particular event. In part because it's—the strength of the evidence is (inaudible), but also in part because I don't want [defendant's counsel] faced with

incidents that he hasn't heard about and if he already has the police report in this case at least he knows what's coming.

"I would agree that it is prejudicial toward [defendant] but really any evidence against him is prejudicial to some degree, and the test is whether it's unfairly prejudicial. I don't believe that it's unfairly prejudicial, nor do I believe that it is particularly inflammatory compared to the other evidence that's going to come in anyway in the case in chief.

"So I'm going to allow this evidence but it needs to be very carefully constrained to that one incident."

Pursuant to that ruling, the state elicited testimony from Feinstein regarding the 2007 incident, as well as photographs depicting Feinstein after that earlier incident. Defendant objected to the admission of the photographs, but the trial court overruled the objection and admitted the evidence. The jury ultimately found defendant guilty of both counts of fourth-degree assault (Counts 1 and 3) and one count of harassment for burning the victim with a cigarette (Count 4). The jury acquitted defendant on Count 2, the charge of harassment predicated on defendant punching the victim in the mouth.

On appeal, defendant argues that the trial court erred in allowing the state to offer evidence of the 2007 incident, reprising his argument that the evidence was "admitted solely to show defendant's propensity to commit assaults, which is an improper basis to admit the evidence." His contentions, however, have narrowed to a single legal issue: whether prior bad acts can be admitted to prove intent even if the defendant is not specifically disputing that element of the crime.

Although the legal issue on appeal is a narrow one, it cannot be properly analyzed apart from its more complicated legal context. The statutory genesis of the dispute, OEC 404(3), provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

That evidentiary rule, the court explained in *Johns*, is a rule of inclusion, permitting the introduction of "other crimes" evidence as long as the evidence is relevant for a noncharacter purpose. *State v. Garrett*, 350 Or 1, 6, 248 P3d 965 (2011) (describing *Johns*). Depending on the purpose for which the evidence is offered, the test for relevance may differ. For instance, when the proffered noncharacter purpose is intent, *Johns* held, a court must consider the following five questions to determine whether a prior act is relevant:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?"

301 Or at 555-56; *Garrett*, 350 Or at 7 (explaining that those five questions relate to the issue of relevance and citing *State v. Pratt*, 309 Or 205, 211, 785 P2d 350 (1990)).[3]

On appeal, defendant concedes that the state's evidence "satisfies the *Johns* criteria" for relevance to prove intent: "the prior act and the present act require proof of intent and involve the same victim and a similar act." What he argues, instead, is that the *Johns* criteria only apply when

---

[3] There is a sixth *Johns* question that comes into play if the first five are met: whether the probative value of the prior-act evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay, or presentation of cumulative evidence. 301 Or at 556; *see State v. Deloretto*, 221 Or App 309, 314, 189 P3d 1243 (2008), *rev den*, 346 Or 66 (2009) ("The inquiry is cumulative: if the answer to any of the first five inquiries is negative, then the evidence is not relevant and the court need not proceed to the balancing in the sixth inquiry, presumably because irrelevant evidence is of *no* probative value." (Emphasis in original.)). We note that the five *Johns* factors that were explored in the trial court, 250 Or App at 108 n 2 , were actually a second set of considerations that relate to balancing under the sixth question. The parties and the trial court did not explicitly address the five *Johns* factors pertaining to relevance.

intent is a *contested issue* in the case. That is, he argues that, as a threshold matter, the evidence cannot be relevant to prove intent in his case because the only issue at trial was whether the alleged acts occurred at all, and not whether they were intentional. According to defendant, this court has previously noted that the "question is open,"[4] but several of our cases "suggest that evidence offered to prove intent is inadmissible under OEC 404(3) when a defendant's argument is that the crime did not occur."

In that regard, defendant principally relies on three cases, *State v. Sicks*, 33 Or App 435, 438, 576 P2d 834 (1978), *State v. Baughman*, 164 Or App 715, 995 P2d 551 (2000), *rev dismissed*, 333 Or 596 (2002), and *State v. Phillips*, 217 Or App 93, 174 P3d 1032 (2007). *Phillips* cites a fourth case, *State v. Osborne*, 174 Or App 88, 25 P3d 356 (2001), that defendant does not separately discuss but that, as described below, also supports his position. The state, meanwhile, relies on *State v. Yong*, 206 Or App 522, 138 P3d 37, *rev den*, 342 Or 117 (2006), for the proposition that prior assaultive conduct between the defendant and the victim is *always* relevant to prove the required mental states for assault and harassment.

*Sicks*, the earliest of the cases cited by defendant, was decided well before *Johns* and before OEC 404(4) limited the court's ability to balance probative value of uncharged misconduct against its prejudicial effect.[5] In *Sicks*, the

---

[4] *See State v. Leach*, 169 Or App 530, 534, 9 P3d 755 (2000), *rev den*, 332 Or 632 (2001) ("We note, at the outset, that there is a substantial and unresolved question as to whether 'prior bad acts' evidence can ever be admitted as being relevant to intent where, as here, the defense is that the charged crime never occurred."); *see also State v. Bunting*, 189 Or App 337, 344, 76 P3d 137 (2003) ("Having concluded that evidence relating to defendant's 1991 convictions did not meet the *Johns* test for evidence offered under OEC 404(3) to prove intent, we need not answer the question identified in *Leach*: whether evidence is relevant for that purpose where, as here, defendant's theory of defense was that the charged crime never occurred.").

[5] Notwithstanding the trial court's discussion of balancing under *Johns* in this case, *see* 250 Or App at 111 n 3, 112 n 4, OEC 404(4) prohibits balancing the probative value of uncharged misconduct against its prejudicial effect in criminal cases, unless the state or federal constitution requires otherwise. *See State v. Jones*, 246 Or App 412, 418, 266 P3d 151 (2011) ("[A]s we recognized in *State v. Dunn*, 160 Or App 422, 430, 981 P2d 809 (1999), *rev den*, 332 Or 632 (2001), the enactment of OEC 404(4) in 1997 effectively removed that factor from the *Johns* analysis.").

defendant was charged with sodomizing a child, and the state sought to introduce evidence that 14 other young males had similar experiences with the defendant, some of whom actually "participated with defendant and the alleged victim in group sexual activity." 33 Or App at 437. The trial court ruled that the evidence was inadmissible, and the state appealed, arguing, among other contentions, that the evidence was relevant to prove the defendant's intent. We affirmed and, as to the issue of intent, explained:

> "The state asserts several arguments for the admissibility of the evidence in question here. The first is that the evidence tends to establish defendant's intent. Although the state must establish not only that defendant performed the alleged acts, but also that he did so with the requisite culpable mental element, the better view is that evidence of similar acts with other persons will not be admitted for this purpose simply because defendant has pled not guilty. *People v. Kelley*, 66 Cal 2d 232, 57 Cal Rptr 363, 424 P2d 947 (1967). Where the charged acts, if proven, would by themselves strongly indicate the required state of mind, evidence of other similar acts should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent. *See State v. Start*, [65 Or 178, 132 P 512 (1913)]; *cf. State v. Zimmerlee*, 261 Or 49, 492 P2d 795 (1972). The evidence was not admissible under this head of the state's argument."

33 Or App at 438. We likewise held that the evidence was not admissible to prove "identity" when that issue was not contested:

> "The simple and adequate answer to that is that identity is not really in issue here as it was in the cases where other crimes evidence has been allowed for that purpose. Defendant has conceded that he and the boy named in the indictment are well acquainted and that the boy would be able to identify him. The *contested issue is not identity, but whether the alleged acts were performed.*"

*Id.* at 439 (citation omitted; emphasis added).

More than 20 years later, against the backdrop of *Johns*, we applied similar reasoning in *Baughman*. The defendant in *Baughman* was accused of sexually abusing his

daughter after telling her a story about "bloody bears." The state sought to introduce evidence that, several years earlier, the defendant similarly told another one of his daughters a story about "bloody bears" before abusing her. The trial court admitted that evidence as proof of a "signature crime" to show the identity of the perpetrator.

On appeal, the defendant argued that identity was never at issue; his theory at trial was that the victim had fabricated the entire story. Describing *Sicks* as "closely analogous," we agreed with the defendant and reversed on the ground that, "in contrast to the 'signature crime' precedents, the issue was not whether defendant, as opposed to anyone else, had committed the crime. Rather, *it was whether a crime had occurred at all*." *Baughman*, 164 Or App at 722 (emphasis added). Thus, " 'identity' was not at issue, and the challenged evidence was not relevant for that purpose." *Id.*

The following year, we decided *Osborne* and made explicit that the *Johns* test for relevance only applies if intent is actually a contested issue in the case. The defendant in *Osborne* was charged with sodomy and sexual abuse based on incidents involving a child who was six or seven years old. The state offered evidence of a prior incident involving a different child in which the defendant had "acted in ways that were similar to the ways that he allegedly acted toward the victim in this case." 174 Or App at 90. The defendant objected to the admission of that evidence on the ground that there were no issues of motive, plan, intent, accident, identity, or similar matters in the case that would permit the admission of those other bad acts. "Rather, his defense was simply that the events that the victim described had not occurred." *Id.*

On appeal, we held that the evidence of uncharged misconduct was inadmissible. We explained:

> "The tests to determine whether the evidence of other crimes is relevant, as described in cases such as *Johns* (intent) and *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991) (identity) apply only when the purpose for which the evidence is offered is something other than propensity. * * *

"* * * The difficulty with the state's position is that each purpose that it identifies for the admission of *the evidence is, in reality, only evidence that defendant is the kind of person who would act in conformity with the acts described by the victim.*

"*The only issue at trial was whether the events that the victim described had actually occurred.* If the jury believed that they had occurred, defendant is guilty; if the jury had a reasonable doubt about those events, defendant is entitled to acquittals on the charges. *Identity, intent, and all of the other reasons for which Oregon courts have permitted the introduction of evidence of other crimes or bad acts under OEC 404(3) were not in issue in this case.*"

174 Or App at 91-92 (emphasis added). We observed that the case was materially indistinguishable from *Baughman*, where the "only premise for the state's argument * * * was that the similarity of the two events made it more likely that defendant had abused the victim." *Id.* at 92.

Then, in *Yong*, we again addressed an argument that neither "identity" nor "intent" were at issue for purposes of OEC 404(3), this time in a case involving domestic violence. The state offered evidence that the defendant, charged with stalking, fourth-degree assault, and other crimes, had previously assaulted the victim and an ex-wife. The trial court admitted the evidence of prior assaults on the ground that it was relevant "first, to show, as between defendant and the victim, the identity of the aggressor and, second, to show that defendant acted intentionally, not recklessly, in engaging in the charged conduct." 206 Or App at 540.

Applying *Baughman*, we held that the previous incidents of domestic violence were not admissible to prove identity. We explained, "[h]ere, too, the issue was whether a crime occurred, not whether the defendant, in contrast to some other person, committed it." *Yong*, 206 Or App at 541. We reached a different conclusion, however, on the issue of intent. The defendant argued that intent, like identity, was not a contested issue because the issue at trial was " 'whether the alleged act occurred at all. [His] defense was that he never assaulted [the victim]. He consistently testified that he

never struck her.' " *Id.* at 541 (quoting the defendant's argument).[6] We disagreed:

> "Defendant is mistaken. In [*State v. Moen*, 309 Or 45, 60, 786 P2d 111 (1990)], the Supreme Court explained that, long before [*Johns*] was decided, the court had recognized the relevance of a defendant's previous hostile acts toward a victim. The court stated:
>
>> " 'This type of evidence has special relevance to the issue of a hostile motive, which in turn is probative of intent. Evidence that shows a hostile relationship existed between a defendant and his victim tends to shed light on a defendant's *mens rea*. The state had the burden to prove beyond a reasonable doubt that defendant's acts were intentional.
>>
>> " 'This court noted in [*Johns* ] that "[i]ntent or state of mind is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind. * * * [T]herefore courts very liberally admit prior crime evidence to prove *mens rea*." 301 Or at 551.
>>
>> " 'In *Johns*, this court permitted the introduction of evidence of the defendant's attempt to kill a different spouse six years earlier because the evidence tended to prove that "when similarly agitated in a domestic setting defendant will act violently and intentionally." 301 Or at 551. In parallel fashion, the same inferences may be drawn in this case concerning defendant's mental state during the killings from evidence that shows defendant's intentional reaction under similar circumstances.' "

*Yong*, 206 Or App at 542 (quoting *Moen*, 309 Or at 68-69) (brackets and omission in *Moen*).

---

[6] The defendant relied on our statement in *Leach*, 169 Or App at 534-35,

"that there is a substantial and unresolved question as to whether 'prior bad acts' evidence can ever be admitted as being relevant to intent where, as here, the defense is that the charged crime never occurred. That is, this is not a case of allegedly 'innocent' or 'accidental' ambiguous conduct."

*Yong*, 206 Or App at 541.

We then concluded that, given the factual dispute concerning the defendant's role in the altercation, the principle articulated in *Moen* "applies with equal force in this case":

> "Both defendant and the victim acknowledged in their trial testimony that an altercation occurred between them on January 11. It also was undisputed that the victim suffered physical injury during that incident. According to the victim, she was the aggressor, assaulting defendant by pushing him, trying to punch him in the chest and face, and kicking him 'hard' in the back. Defendant testified that he tried to restrain the victim but never struck her. But it was the state's theory that defendant had, in fact, been the aggressor, that he assaulted the victim as he had done in the past, and that the victim changed her story out of fear of retaliation. Here, as in *Johns* and *Moen,* the proffered evidence was admissible because it tended to prove that 'when similarly agitated in a domestic setting defendant will act violently and intentionally.' *Id.* at 69. *That fact was directly relevant to the state's theory, in opposition to defendant's defense, that defendant was the aggressor in the January 11 altercation.* As a consequence, the trial court did not err in admitting the challenged prior crimes evidence."

*Yong,* 206 Or App at 542-43 (emphasis added).

Subsequently, in *Phillips* we synthesized our case law regarding evidence of uncharged misconduct under OEC 404(3) and again reiterated that the evidence must be relevant to a *contested* issue:

> "Subsequent cases cited by defendant are merely applications of the holding in *Baughman* that uncharged misconduct evidence is admissible only if it is relevant to some *contested* issue beyond propensity or bad character. * * *
>
> "* * * * *
>
> "*Baughman* and subsequent cases, then, do not resolve the inquiries in this case; they merely define a preliminary question: Was the state seeking to proffer the evidence of the [prior bad act] in order to prove a fact that defendant contests? If not, the evidence is inadmissible. If so, it is still inadmissible unless the evidence is genuinely evidence of some fact other than defendant's propensity to engage in criminal conduct."

217 Or App at 99-100 (emphasis in original). We ultimately held that the proffered evidence in *Phillips* was relevant to a fact in issue—namely, the existence of a general plan to steal from the victim. And, we held, because OEC 404(3) is a rule of inclusion rather the exclusion, "evidence that is relevant to the existence of a general plan is admissible *unless defendant explicitly or implicitly concedes* the plan's existence, which did not occur here." *Id.* at 102 (emphasis added).

Following *Phillips*, we decided *State v. Pitt*, 236 Or App 657, 237 P3d 890 (2010), *rev allowed*, 349 Or 663 (2011), a case in which the defendant, convicted of various sexual crimes, argued that the trial court erroneously admitted evidence of his earlier sexual abuse of the victim and her cousin. The defendant argued that "his intent was not a contested fact, because the defense theory was 'that the crime never occurred at all, or it was committed by someone else'—not that, if he touched the victim, his conduct was innocent or accidental." 236 Or App at 661.

The state responded (as it has in this case) that, when a defendant pleads not guilty, the plea is a denial of every material allegation, and the state must prove every element beyond a reasonable doubt, including intent. *Id.* We did not address that argument because, applying the framework set out in *Phillips*, we concluded that the "defendant did not simply argue that the charged acts never occurred." 236 Or App at 663. Rather, "[b]y arguing that the victim was abused by someone else, defendant contested the accuracy of the victim's identification of him as the perpetrator of the charged acts." *Id.* Although that type of identification was, "[s]trictly speaking," different from "identity," we concluded that the "credibility of the victim's identification of defendant * * * was plainly a contested issue" and that the "uncharged misconduct evidence was relevant to bolster the victim's credibility on that issue." *Id.* at 663-64.

In sum, we have repeatedly held that, as a threshold matter, evidence of prior bad acts must be relevant to a contested issue in the case, and that is true of intent as well. *Osborne*, 174 Or App at 91-92. Contrary to the state's

argument (an argument raised but not addressed in *Pitt*[7]), *intent is not a contested issue for purposes of OEC 404(3) in every case merely by virtue of the fact that the state must prove that element. If that were true, Osborne* would have been decided differently; there, too, the state bore the burden of proving that element of the charged crimes. Indeed, in *Sicks* we explicitly rejected the argument the state now makes, stating that the "better view is that evidence of similar acts with other persons will not be admitted for this purpose simply because defendant has pled not guilty." 33 Or App at 438.

At the same time, we have also rejected the categorical approach that defendant posits, namely, that, whenever a defendant denies that the charged conduct took place, the defendant's mental state is *not* a contested issue. Indeed, the facts or nature of the charges may be such that, even if a defendant denies committing the charged acts, the defendant's previous conduct will shed light on a contested issue of *mens rea*—for example, who, between the defendant and the victim, was the aggressor during a fight, *Yong*, 206 Or App at 542-43; whether the defendant had homicidal intent when killing the victim, *Moen*, 309 Or at 68-69; or whether the acts, even if committed, lend themselves to some other explanation of the defendant's intent, *cf. Sicks*, 33 Or App at 438 (where the charged acts "would by themselves strongly indicate the required state of mind," evidence of prior bad acts "should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent"). Instead, when applying OEC 404(3), our cases have required trial courts to determine, on a case-by-case basis, whether intent, or some other nonpropensity matter, is genuinely at issue in the case.

In this case, had defendant been charged solely with fourth-degree assault, we might well agree that intent was not genuinely a contested issue. Defendant did not proffer at trial any explanation to suggest that his alleged conduct—striking Feinstein in the face and putting a cigarette out on her chest—was somehow inadvertent, or otherwise unintentional, let alone not reckless. Furthermore, the charged acts

---

[7] The Supreme Court has allowed review and heard oral argument in *Pitt*, 349 Or 663, which potentially raises some of the same issues as this case.

by themselves strongly indicate volitional conduct designed to produce injury. Under those circumstances, the evidence of defendant's prior assault of Feinstein, even if sufficiently probative of intent under the *Johns* criteria, might fail the more fundamental inquiry: intent was not a contested issue for purposes of the charged assault, either explicitly, because of the nature of the defense or charges, or implicitly, by virtue of, for example, the equivocal nature of the charged conduct.[8]

That said, defendant was not charged only with fourth-degree assault. He was also charged with two counts of harassment, an offense that requires the state to prove a different *mens rea* from fourth-degree assault. That is, for harassment, the state was required to prove not only that defendant intended offensive physical contact—*i.e.*, to punch the victim in the mouth (Count 2) and to burn her (Count 4)—but also that he did so with the *specific intent* to harass or annoy her. ORS 166.065(1) (a person "commits the crime of harassment if the person intentionally: (a) Harasses or annoys another person by: (A) Subjecting such other person to offensive physical contact"); *State v. Sallinger*, 11 Or App 592, 595, 504 P2d 1383 (1971) ("The state is required to prove beyond a reasonable doubt that the defendant had the *specific* 'intent to harass, annoy or alarm.' " (Emphasis in original.)); *cf. State v. Barnes*, 209 Or App 332, 340, 147 P3d 936 (2006), *rev den*, 342 Or 256 (2007) ("However, defendant's argument mischaracterizes the intent element of harassment, which is to '[h]arass[ ] or annoy[ ] * * * by [s]ubjecting [the] other person to offensive physical contact[.]' ORS 166.065(1)(a)(A). A perpetrator can easily contact a person with the sole purpose of sexual gratification without any intention of harassing or annoying that person, and likewise the opposite is true."). Proof of a defendant's specific intent, as the court observed in *Johns* itself, "is often the most difficult element of a crime to prove because many crimes are unwitnessed and even if a witness is present, the witness can only surmise the actor's state of mind." 301 Or at 551.

---

[8] We do not mean to circumscribe the universe of ways in which intent might be at issue in a particular case. For instance, in the domestic violence context, it might be the victim, turned reluctant or even adverse witness for the state, who actually puts the defendant's intent in play. *See, e.g., Yong*, 206 Or App at 542 (intent at issue where the victim testified at trial that "she was the aggressor, assaulting defendant by pushing him").

Thus, this was not a case in which the sole issue was whether the events described by the victim had actually occurred. Even assuming that defendant intentionally punched or burned Feinstein, the state was also required to prove, for purposes of the harassment charges, *why* he did that—namely, that he punched her and then burned her with the specific intent to harass or annoy her. At least one of defendant's alleged acts—punching Feinstein in the mouth over a "touchy" subject—is susceptible to more than one reasonable inference as to whether it was done with the specific intent to "harass or annoy." In fact, the jury apparently found that defendant had the requisite mental state to injure the victim by punching her (the conviction for fourth-degree assault on Count 1), but that he did not do so with the specific intent to harass her (the acquittal on the charge of harassment in Count 2). Thus, in this particular circumstance, the fact that defendant posited an alternate version of events does not mean that his specific intent to harass or annoy was not "at issue" in the case. Rather, defendant's specific intent was a contested issue by virtue of the evidence and the nature of the harassment charges, and defendant's previous act of punching the victim after an argument and his knowledge of her reaction to a punch in the mouth in that circumstance—*i.e.*, whether it caused her annoyance or particular mental distress—were relevant to that question of defendant's state of mind during the offensive contact. Accordingly, the trial court did not err in concluding that intent was a contested issue despite defendant's theory of the case.

Affirmed.