Submitted on remand from the Supreme Court March 13, reversed and remanded August 14, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN SHANNON JONES,
*Defendant-Appellant.*

Lane County Circuit Court
200907188; A142958

308 P3d 347

Peter Gartlan, Chief Defender, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the opening brief for respondent. Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the supplemental brief.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Egan, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

This case is before us on remand. In our initial decision, we affirmed defendant's convictions, following a jury trial, for numerous crimes of domestic violence committed against his wife; in so holding, we concluded, *inter alia*, that defendant had failed to adequately preserve his arguments concerning the proper application of the test from *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), to certain "prior bad acts" evidence introduced at trial. *State v. Jones*, 246 Or App 412, 417-18, 266 P3d 151 (2011) (*Jones I*), *vac'd and rem'd*, 353 Or 208, 297 P3d 480 (2013). On review, the Oregon Supreme Court, without specific amplification, vacated and remanded for reconsideration in light of *State v. Leistiko*, 352 Or 172, 282 P3d 857, *modified on recons*, 352 Or 622, 292 P3d 522 (2012). As explained below, although we adhere to our prior conclusion that defendant failed to preserve the asserted error, we now conclude that the error is apparent on the record, ORAP 5.45(1), and exercise our discretion to review and remedy that error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). Accordingly, we reverse and remand.

In *Jones I*, we did not describe the disputed evidence, because the particular nature of that evidence was, ultimately, immaterial to our preservation analysis and disposition. However, on remand, a description of the predicate circumstances, including the disputed evidence, is essential context for our consideration of *Leistiko*'s applicability. Accordingly, we recount those circumstances in some detail.

This case involves charges that defendant assaulted, strangled, sodomized, and menaced his wife over the course of several weeks in March 2009. The charges involved, among other things, allegations that defendant pulled out one of the complainant's teeth, burned her tongue and hand with a cigarette, beat her with a boot, a crescent wrench, a hammer, a fire extinguisher, and barbeque tongs, cut her with a knife, shaved off her eyebrows and some of her hair, forced her to lick a toilet, urinated in her mouth, and burned her genitals with a lighter.

The state's theory of the case was that defendant inflicted the various injuries because he was enraged at the complainant for sleeping with other people. The complainant testified that defendant's purpose in causing the injuries was to make her less attractive to other men. Defendant's defense was not that the complainant's injuries had not occurred or had not been inflicted intentionally—but, instead, that someone other than himself had inflicted them.

As pertinent to our review in *Jones I*, and now on remand, the state sought to introduce prior bad acts evidence of an alleged assault by defendant against his former girlfriend, JM, with whom defendant had lived approximately two years before the charged incidents occurred.[1] JM travelled with defendant in his semi-truck for approximately five days and, during that journey, she told him she wanted to go home, but he would not take her home. He would not let her make telephone calls. During the trip, defendant accused JM of being unfaithful to him, threatened to cut her with a box-cutter, threatened to kill her brother, threw a cup at her, hit her with his fists, a shoe, and a pipe, choked her, cut off her clothing, and twisted her nipples with a pair of pliers. JM testified that defendant's stated purpose when he threatened to cut her was to make her less attractive.

The state argued before the trial court that the evidence pertaining to the alleged assault against JM satisfied the cumulative multi-element test for admissibility prescribed in *Johns*.[2] Defendant's sole argument before the trial

---

[1] The state also introduced evidence of defendant's purported prior assaults on the complainant. Given our analysis as to the admissibility of the evidence pertaining to JM and our disposition, we do not address the admissibility of that other acts evidence.

[2] Under *Johns*, the relevance of prior bad acts evidence to prove intent is determined based on the following factors:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?"

301 Or at 555-56.

court in opposing the admissibility of that evidence was that it did not meet certain of *Johns*'s criteria (*viz.*, the third, fourth, and fifth requisites); defendant did *not* argue that the *Johns* methodology was categorically inapplicable for any reason. *Jones I*, 246 Or App at 414, 418.

The trial court determined that the disputed evidence satisfied the *Johns* requisites, including those that defendant had specifically contested. *Id.* at 416. The jury subsequently convicted defendant on 19 counts, all relating to defendant's alleged conduct against the complainant. *Id.* at 414.

On appeal in *Jones I*, defendant challenged the admissibility of the evidence pertaining to JM, but did so on a qualitatively different basis than that presented before the trial court. Rather than contending that the evidence was inadmissible because it did not satisfy certain of *Johns*'s requisites (a contention that he did *not* renew on appeal), defendant contended, for the first time, that the evidence was categorically inadmissible "because his intent was not at issue in this case" in that "his theory at trial was that the victim was lying and the crimes never took place." *Id.* at 416. We declined to address that argument as unpreserved. In so holding, we referred to the practical and prudential underpinnings of the preservation doctrine and emphasized that defendant's appellate contention as to the categorical inadmissibility of the evidence was qualitatively different from that "'presented clearly to the initial tribunal.'" *Id.* at 417 (quoting *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)). Accordingly, and after rejecting defendant's other contentions, we affirmed.

Defendant, as noted, sought review. And, as also noted, following the Supreme Court's decision in *Leistiko*, the case was, without amplification, vacated and remanded to us for reconsideration in light of *Leistiko*. 353 Or 208.

We begin by briefly revisiting our preservation analysis in *Jones I*. Upon careful consideration, we respectfully submit that nothing in *Leistiko* calls into question our determination that defendant's newly minted appellate contention in *Jones I* was, in fact, unpreserved in light of the principles pronounced, and reiterated, in *Davis, State v.*

*Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), and *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Indeed, nothing in the Supreme Court's opinion in *Leistiko* speaks to preservation. Thus, if our consideration on remand were limited to preservation *qua* preservation, we would, respectfully, adhere to our original analysis and disposition.

But our consideration is not so limited. In supplemental briefing following remand, defendant submits that, even if the asserted evidentiary error was unpreserved, it is now—in the light of *Leistiko*'s elucidation—properly reviewable as "plain error" within the construct announced in *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (explaining that "plain error" is determined by reference to the law existing at the time the appeal is decided), and that we should exercise our discretion under *Ailes* to review and correct that error. For the reasons that follow, we agree.[3]

To qualify as an "error of law apparent on the record," ORAP 5.45(1), the purported error must meet three requirements: (1) the error must be one of law; (2) it must be "apparent," *i.e.*, the point must be obvious, not reasonably in dispute; and (3) it must appear on the record, *i.e.*, the court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990); *Ailes*, 312 Or at 381-82. If those requirements are met, the court then must determine whether it is appropriate to exercise its discretion to correct the error, taking into consideration the interests of the parties, the nature of the case, the gravity of the error, the ends of justice, and whether the policies behind the general rules of preservation have been served. *Id.* at 382 n 6. Generally, we "employ utmost caution" before deciding a case based on an unpreserved error. *State v. Molette*, 255 Or App 29, 296 Pd 594, *rev den*, 353 Or 788 (2013).

With those constraints in mind, we return to *Leistiko* and its application on this record.

---

[3] *Cf. State v. Williams*, 258 Or App 106, 308 P3d 330 (2013) (applying a qualitatively different analysis, as framed by the parties' preserved contentions, as to the inadmissibility of proffered "prior bad acts" evidence purportedly pertaining to the defendant's culpable mental state).

In *Leistiko*, the defendant was charged with first-degree rape by means of forcible compulsion of three different complainants in separate incidents. 352 Or at 174. The defendant had contacted each of the complainants after the complainants had advertised "erotic services" on Craigslist. *Id.* The defendant did not dispute that he had engaged in intercourse with each of the three complainants; however, he contended that the intercourse with each did not involve forcible compulsion. *Id.* at 177.

The state offered, pursuant to OEC 404(3), evidence from a fourth woman, who also advertised "erotic services" on Craigslist, who testified that the defendant had had forcible sexual intercourse with her. The defendant unsuccessfully objected to the admission of that evidence, and, on review of our decision affirming the defendant's conviction, the Supreme Court ultimately reversed. In so holding, the Supreme Court rejected the state's contention that the disputed evidence was properly admissible as pertaining to the defendant's alleged intent (*viz.*, that the "defendant intended to forcibly compel the victims to have sexual intercourse with him"). *Id.* at 182 (internal quotation marks omitted). In that regard, the Supreme Court reasoned:

> "[T]he doctrine of chances rests on the proposition that the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent. Neither of those conditions occurred here. Defendant never conceded that he forcibly compelled any of the three women to engage in intercourse with him, and the trial court neither admitted the uncharged misconduct evidence as conditionally relevant nor instructed the jurors to consider that evidence on the issue of intent only if they first found that defendant had forcibly compelled the women to engage in intercourse with him."

*Id.* at 185-86. *See also State v. Pitt*, 352 Or 566, 579, 293 P3d 1002 (2012) ("When the act is so established by the defendant's stipulation, or when the trial court instructs

the jury that it first must find from the evidence that the alleged act occurred before it may consider the evidence of other crimes to determine intent, uncharged misconduct evidence that is sufficiently similar to the charged acts can be admitted to prove that the defendant acted with a culpable state of mind.").

So too here. Here, as in *Leistiko*, defendant did not concede that he had engaged in the *actus reus*; nor was the jury instructed to consider the uncharged misconduct evidence as "evidence on the issue of intent only if they first found that defendant had [committed the *actus reus*]." *Leistiko*, 352 Or at 186. Those circumstances are patent and uncontroverted, and the application of *Leistiko*'s principles on this record is "not reasonably in dispute." *Brown*, 310 Or at 355.[4] Accordingly, in light of *Leistiko*, the error in admitting JM's testimony and submitting it to the jury without the requisite qualifying instruction[5] was reviewable "plain error."

We turn, finally, to our exercise of *Ailes* discretion. As noted, we take into consideration matters such as the interests of the parties, the nature of the case, the gravity of the error, the ends of justice, and whether the policies behind the general rules of preservation have been served. *Ailes*, 312 Or at 382 n 6. Here, the gravity of the error and the nature of the case militate strongly in favor of reversal. In particular, we agree with defendant that the details of the prior assault on JM—and in particular the testimony

---

[4] We reject without extended discussion the state's implicit, almost parenthetical, suggestion that the evidence was properly, alternatively, admissible as evidence of "identity," to counter defendant's contention that he was not the perpetrator. That suggestion fails for either of two independently sufficient reasons. *First*, the trial court explicitly, and properly, refused to admit the disputed evidence as evidence of identity. The circumstances of the purported assault against JM and the assault against complainant did not bear the requisite "distinctive methodology 'so as to earmark the acts as the handiwork of the accused,'" as is required for "signature crimes" evidence. *Pitt*, 352 Or at 577 (quoting *State v. Johnson*, 313 Or 189, 196, 832 P2d 443 (1992)). *Second*, even if the evidence had been properly admitted for that purpose, the constraints on admissibility as proof of intent (for which, most assuredly, it was admitted) would still apply and were not satisfied.

[5] As the proponent of the "prior acts" evidence proffered to prove intent in a case in which the defendant had not admitted or otherwise stipulated to his or her commission of the *actus reus*, it was incumbent upon the state to ensure that the prerequisites of admissibility were satisfied.

that defendant used pliers on her nipples—was highly inflammatory.[6]

In sum, the improperly admitted evidence was highly inflammatory and easily could have been improperly used by the jury as demonstrating defendant's propensity to commit outrageous assaults against domestic partners. The admission of that evidence was not harmless. Accordingly, we exercise our discretion to remedy the plain error.

Reversed and remanded.

---

[6] Although the state posits that the purported prior assault on JM was "no more inflammatory than the acts underlying the current charges, and thus they were unlikely to have reflected on defendant's character any more than the charged offenses did," that, respectfully, misses the point: Defendant denied that he had assaulted the complainant, and, without appropriate constraints on the use of that evidence as per *Leistiko* and *Pitt*, the jury was free to consider JM's testimony in determining whether defendant had, in fact, committed the charged acts.