Submitted on remand from the Supreme Court July 15, reversed and remanded October 9, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DENNIS BRIAN HUTTON,
*Defendant-Appellant.*

Columbia County Circuit Court
096061; A142745

311 P3d 909

Peter Gartlan, Chief Defender, and Jedediah Peterson, Deputy Public Defender, filed the briefs for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

In *State v. Hutton*, 250 Or App 105, 279 P3d 240 (2012), we rejected defendant's challenge to the admission of evidence of his prior bad acts, holding that the evidence was relevant to prove intent, a nonpropensity purpose; we therefore affirmed his convictions for fourth-degree assault and harassment. The case is now before us on remand from the Supreme Court for reconsideration in light of that court's subsequent decision in *State v. Pitt*, 352 Or 566, 293 P3d 1002 (2012). *State v. Hutton*, 353 Or 533, 300 P3d 1222 (2013). On remand, we conclude that, in light of *Pitt* and other later-decided cases, the trial court erred in *unconditionally* admitting evidence of defendant's prior bad acts—that is, admitting the evidence in the absence of (1) defendant's concession that the charged acts occurred or (2) an instruction to the jury that it was not to consider the prior acts as evidence of defendant's mental state until it first found that defendant in fact committed the charged acts. Accordingly, we now reverse and remand on the basis of that evidentiary error.[1]

We repeat our original description of the background of this appeal:

"On Valentine's Day in February 2009, defendant and the victim, Feinstein, were 'hanging out together' and drinking alcohol in a trailer. Defendant and Feinstein had been in a romantic relationship in the past but, as of that night, were not 'officially together.'

"From there, their stories diverge. According to Feinstein, they fell asleep in the bedroom of the trailer. She awoke a short time later to use the bathroom and get something to drink. When she returned to the bedroom, defendant was sitting in the bed and smoking a cigarette. They proceeded to argue about the trailer and other 'touchy' subjects. Defendant became angry and hit her in the mouth. She took a step back, and defendant reached out, put his cigarette on her chest, and used it to push her back. Feinstein then

---

[1] Defendant also challenges the trial court's restitution award. We rejected that assignment of error in our original opinion, 250 Or App at 107 n 1, but now, in light of our remand, we do not reach the restitution issue.

went to the living room of the trailer, and defendant stayed in the bedroom until he left approximately an hour and a half later. The following day, her lip was swollen and sore, and she felt a burning sensation on her chest. She called the police and reported that defendant had injured her. Defendant was charged with two counts of fourth-degree assault (one count for striking Feinstein and another for burning her) and two counts of harassment (again, one count for striking Feinstein and another for burning her), and he proceeded to trial on those charges.

"During his opening statement, defendant's counsel advanced a different version of the events, arguing that no assault or harassment had occurred. He stated, 'My client did not strike Miss Feinstein, he did not put out a cigarette on her, and that's what we're going to prove here at the end of the day.' Defendant's theory, which he later testified in support of, was that he left the trailer around 10:30 p.m. and returned to find Feinstein passed out drunk on the floor, at which point she told him that she had burned herself.

"After defendant's opening statement, the prosecutor moved *in limine* for a ruling on the admissibility of evidence of prior misconduct—namely, evidence that, in 2007, defendant had hit Feinstein in the lip during an argument in the trailer, causing her lip to swell. Defendant had been indicted in a separate case on charges arising out of that earlier incident but still had not yet been tried on those charges by the time of trial in this case.

"The prosecutor argued that evidence of the prior assault was admissible under OEC 404(3) because it was relevant for 'showing intent in this case.' The prosecutor framed her argument in terms of the five-part test set forth in *State v. Johns*, 301 Or 535, 557-59, 725 P2d 312 (1986), for determining 'whether the probative value of the evidence exceeds its prejudicial nature.' The prosecutor, focusing on the 'first prong' of that test, argued that evidence of the prior assault was necessary 'to show the jury that this incident was not some odd accident—it sounds as though there's a defense that this did not—he did not commit the action on it but there's another explanation.' Relying on *State v. Wieland*, 131 Or App 582, 887 P2d 368 (1994), the prosecutor argued that, as a matter of logic, 'the more often that an unusual event occurs, such as getting a fat lip or having injuries around the neck area, the less likely it is

that that occurrence is accidental.' *See id.* at 589 ('As a matter of logic, the more often an unusual event occurs, the less likely it is that the occurrence is accidental. Because this evidence [of a prior arson] has a tendency to make the fact that the 1986 fires were caused by arson more likely, it is relevant. OEC 401.'). The prosecutor further argued that the evidence was relevant to prove defendant's mental state on the harassment charges. She explained that the context of the testimony by Feinstein 'would be when we're discussing the victim's state of mind in reaction to what was happening, why did she react the way she did, because she had experienced this before,' and also argued that prior assaults by defendant against Feinstein 'are actually going to go to show his intent that's required on the Harassment charges.' The prosecutor, thus, was suggesting that because defendant had engaged in a pattern of abuse with Feinstein and had punched her in the mouth in the past, he therefore knew how she would react to that type of abuse.

"Defendant, meanwhile, argued that 'the defense is not that it was somehow accidental, it's that it did not happen, in fact[.]' Defendant directed the trial court to 'what was said here in opening,' when defendant's counsel stated that defendant did not strike Feinstein, did not put out a cigarette on her, and 'that's what we're going to prove here at the end of the day.' Thus, defendant argued, the prior assault was being offered only to show that defendant had a propensity to abuse Feinstein—an impermissible and highly prejudicial purpose.

"The trial court granted the state's motion *in limine,* explaining:

"'[I] believe that based on the *Johns* test it—this evidence does fall within those parameters. So I would be concerned if there were other evidence that was not this specific incident date because the second prong of clearly proven may not be of—whatever else has happened may not rise to that level.

"'So I think that the evidence of the prior incident needs to be limited to this one particular event. In part because it's—the strength of the evidence is (inaudible), but also in part because I don't want [defendant's counsel] faced with incidents that he hasn't heard about and if he already has the police report in this case at least he knows what's coming.

"'I would agree that it is prejudicial toward [defendant] but really any evidence against him is prejudicial to some degree, and the test is whether it's unfairly prejudicial. I don't believe that it's unfairly prejudicial, nor do I believe that it is particularly inflammatory compared to the other evidence that's going to come in anyway in the case in chief.

"'So I'm going to allow this evidence but it needs to be very carefully constrained to that one incident.'

"Pursuant to that ruling, the state elicited testimony from Feinstein regarding the 2007 incident, as well as photographs depicting Feinstein after that earlier incident. Defendant objected to the admission of the photographs, but the trial court overruled the objection and admitted the evidence. The jury ultimately found defendant guilty of both counts of fourth-degree assault (Counts 1 and 3) and one count of harassment for burning the victim with a cigarette (Count 4). The jury acquitted defendant on Count 2, the charge of harassment predicated on defendant punching the victim in the mouth."

*Hutton*, 250 Or App at 107-10 (footnote omitted).

In his original briefing to this court, defendant argued that evidence of the 2007 incident was "admitted solely to show defendant's propensity to commit assaults, which is an improper basis to admit the evidence." However, as we explained in our decision, his contentions on appeal had "narrowed to a single legal issue: whether prior bad acts can be admitted to prove intent *even if the defendant is not specifically disputing that element of the crime.*" *Id.* at 110 (emphasis added). The state, for its part, argued that defendant's plea of not guilty—which required the state to prove all elements of the charged offenses—had put all of the elements of the crimes, including intent, at issue in the case. Thus, the state argued that it was entitled to offer evidence of the 2007 incident regardless of defendant's theory of the case.

We began our analysis in *Hutton* with a survey of cases involving proof of "intent," including our decision in *State v. Pitt*, 236 Or App 657, 237 P3d 890 (2010) (*Pitt I*), which was then pending in the Supreme Court, *see* 349 Or 663 (2011). We summarized that body of law as follows:

"[W]e have repeatedly held that, as a threshold matter, evidence of prior bad acts must be relevant to a contested issue in the case, and that is true of intent as well. *** Contrary to the state's argument (an argument raised but not addressed in [*Pitt I*]), intent is not a contested issue for purposes of OEC 404(3) in every case merely by virtue of the fact that the state must prove that element. If that were true, [*State v. Osborne*, 174 Or App 88, 25 P3d 356 (2001),] would have been decided differently; there, too, the state bore the burden of proving that element of the charged crimes. Indeed, in [*State v. Sicks*, 33 Or App 435, 438, 576 P2d 834 (1978)], we explicitly rejected the argument the state now makes, stating that the 'better view is that evidence of similar acts with other persons will not be admitted for this purpose simply because defendant has pled not guilty.' ***

"At the same time, we have also rejected the categorical approach that defendant posits, namely, that, whenever a defendant denies that the charged conduct took place, the defendant's mental state is *not* a contested issue. Indeed, the facts or nature of the charges may be such that, even if a defendant denies committing the charged acts, the defendant's previous conduct will shed light on a contested issue of *mens rea*—for example, who, between the defendant and the victim, was the aggressor during a fight, [*State v. Yong*, 206 Or App 522, 542-43, 138 P3d 37, *rev den*, 342 Or 117 (2006)]; whether the defendant had homicidal intent when killing the victim, [*State v. Moen*, 309 Or 45, 68-69, 786 P2d 111 (1990)]; or whether the acts, even if committed, lend themselves to some other explanation of the defendant's intent, *cf. Sicks*, 33 Or App at 438 (where the charged acts 'would by themselves strongly indicate the required state of mind,' evidence of prior bad acts 'should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent'). Instead, when applying OEC 404(3), our cases have required trial courts to determine, on a case-by-case basis, whether intent, or some other nonpropensity matter, is genuinely at issue in the case."

*Hutton*, 250 Or App at 118-19 (footnote omitted; emphasis in original).

Applying those general principles, we concluded that defendant's specific intent "was a contested issue by virtue

of the evidence and the nature of the harassment charges, and defendant's previous act of punching the victim after an argument and his knowledge of her reaction to a punch in the mouth in that circumstance—*i.e.*, whether it caused her annoyance or particular mental distress—were relevant to that question of defendant's state of mind during the offensive contact." *Id.* at 121. Thus, we held that "the trial court did not err in concluding that intent was a contested issue despite defendant's theory of the case," and we affirmed defendant's convictions. *Id.*

Defendant then petitioned for Supreme Court review of our decision in *Hutton*. While that petition was pending, the Supreme Court decided two cases that, like *Hutton*, involved the admission of evidence of prior bad acts to prove intent. *See State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012); *Pitt*, 352 Or 566. In the first of the two, *Leistiko*, the defendant had been charged with three counts of first-degree rape arising out of separate incidents with three different women. To prove those three charges, the state offered evidence that defendant had forcibly compelled a fourth woman to have sexual intercourse with him, arguing, among other things, that her testimony was admissible under *Johns*, 301 Or at 555-56, to show that defendant had acted intentionally as to at least one of the alleged victims.

The Supreme Court concluded in *Leistiko* that the evidence was not admissible to prove the defendant's intent. The court explained that the analysis in *Johns*, upon which the state relied in *Leistiko*, was based on the "doctrine of chances"—*i.e.*, the theory that "the more often [a] defendant performs the *actus reus*, the smaller is the likelihood that the defendant acted with an innocent state of mind." 352 Or at 182 (internal quotation marks and citations omitted). The doctrine of chances is an exception to the general prohibition on the admission of propensity evidence, because it "does not 'as[k] the trier of fact to infer the defendant's conduct (entertaining a particular *mens rea*) from the defendant's subjective character'" but "depends instead on the proposition that multiple instances of similar conduct are unlikely to occur accidentally." *Id.* (quoting *Johns*, 301 Or at 554). And, when viewed in light of those motivating principles, the state's

argument in *Leistiko* suffered two flaws, the first of which is relevant here:

> "[T]he doctrine of chances rests on the proposition that *the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent. See* [John Henry Wigmore, 2 Evidence § 302, 245 (Chadbourne rev 1979)]. *Neither of those conditions occurred here.* Defendant never conceded that he forcibly compelled any of the three women to engage in intercourse with him, and the trial court neither admitted the uncharged misconduct evidence as conditionally relevant nor instructed the jurors to consider that evidence on the issue of intent only if they first found that defendant had forcibly compelled the women to engage in intercourse with him. *To admit the fourth woman's testimony in the absence of one of those conditions poses, as the court recognized in [State v. Gailey, 301 Or 563, 725 P2d 328 (1986)], an unacceptable risk that the uncharged misconduct evidence is being admitted to prove the act, not the defendant's mental state.*"

*Leistiko*, 352 Or at 185-86 (emphasis added).

A few months after *Leistiko*, the Supreme Court issued its decision in *Pitt*. In *Pitt*, the defendant, who was charged with various sex offenses, argued that evidence of uncharged sexual misconduct was not relevant to prove intent or absence of mistake regarding the charges against him "because his defense was that the charged acts never occurred and, if the acts did occur, he did not commit the acts." 352 Or at 578. "Stated differently, defendant assert[ed] that the relevance of evidence of intent thus depends upon a prior finding of fact or a stipulation that establishes that defendant committed the charged act." *Id.* The Supreme Court, building on its analysis in *Leistiko*, concluded that evidence of prior misconduct was only "conditionally relevant" to prove intent:

> "When the trial court ruled on defendant's motion *in limine,* it applied the doctrine of chances, as construed in *Johns,* and determined that the uncharged acts were sufficiently similar to the charged acts to be relevant to prove intent. However, at the time of the ruling, the trial had not

occurred and, consequently, the record contained no evidence sufficient to support a finding that the charged acts had occurred. Defendant had not stipulated that he had touched A's genital area in Clatsop County. *Before trial, and in the absence of a stipulation by defendant that he had touched A's genital area in Clatsop County, evidence of defendant's uncharged misconduct involving A and R in Lane County was only conditionally relevant.* That is, the uncharged misconduct evidence might have become relevant if certain conditions had occurred concerning the trial court record. First, in the absence of defendant's stipulation, the state would have to introduce evidence at trial sufficient to permit the factfinder to find beyond a reasonable doubt that, in fact, defendant had touched A's genital area in Clatsop County, as charged. Second, the court would have to instruct the jury that it could not consider the evidence of defendant's uncharged misconduct for any purpose unless it first found as a fact that defendant had touched A's genital area in Clatsop County, as charged. *If the record demonstrated that those conditions were satisfied, then the court could allow the state to offer and the jury to consider the evidence of defendant's uncharged conduct for the purpose of deciding whether defendant had committed the charged acts intentionally.*

"The trial court, however, did not decide that the evidence of defendant's uncharged misconduct was conditionally admissible in the manner that we have described above. *It ruled instead, without conditions, that the uncharged misconduct evidence was relevant and admissible. In light of the record that existed when the trial court addressed the motion* in limine, *the court's ruling was erroneous.*"

*Pitt*, 352 Or at 580-81 (footnote omitted; emphasis added). Thus, the court reversed the defendant's convictions and remanded the case to the trial court for further proceedings. *Id.* at 582.

In the wake of *Pitt*, the Supreme Court allowed defendant's petition for review in this case, vacated our decision, and remanded to us for reconsideration. On remand, defendant has filed a supplemental memorandum, in which he now argues that the analysis in our original opinion, which focused on whether intent was a contested issue, is beside the point. According to defendant, *Pitt* establishes that, *even if intent is contested,* evidence of prior bad acts

nonetheless is admissible to prove intent only if two conditions are met: (1) in the absence of a stipulation, the state has offered sufficient evidence to allow a factfinder to find the *actus reus* and (2) the court instructs the jury that it is to consider the prior bad acts as evidence of intent only if it first finds that defendant committed the *actus reus*.[2]

We have since endorsed defendant's reading of *Pitt*. In *State v. Jones*, 258 Or App 1, 308 P3d 347 (2013), we reconsidered a decision that, like *Hutton*, had issued before *Leistiko* and *Pitt*. Our original opinion in *Jones* had affirmed the defendant's convictions, on the ground that he had not preserved for appeal the application of *Johns* to "bad acts" evidence admitted at trial. 246 Or App 412, 417-18, 266 P3d 151 (2011). The Supreme Court, however, vacated our decision and remanded for reconsideration in light of *Leistiko*. *State v. Jones*, 353 Or 208, 297 P3d 480 (2013). At that point, the defendant argued that the preservation issue that we identified in our original opinion was no longer an obstacle, because the error was now apparent on the record in light of *Leistiko*. *See State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003) (holding that "plain error" is determined by reference to the law existing at the time the appeal is decided).

We agreed with the defendant's contention on remand in *Jones* that, under *Leistiko*, it was not only error, but "plain error," to admit evidence of prior bad acts in a case in which (1) the defendant had not admitted committing the *actus reus* and (2) the jury was not instructed that it must first find that the defendant committed the *actus reus* before considering the evidence of other crimes to determine intent. We explained:

> "Here, as in *Leistiko*, defendant did not concede that he had engaged in the *actus reus*; nor was the jury instructed to consider the uncharged misconduct evidence as 'evidence on the issue of intent only if they first found that defendant had [committed the *actus reus*].' *Leistiko*, 352 Or at 186. Those circumstances are patent and uncontroverted, and the application of *Leistiko*'s principles on this record is not 'reasonably in dispute.'"

---

[2] The state has not filed supplemental briefing on remand.

258 Or App at 8 (alterations in *Jones*). We also made explicit that it was incumbent upon the state, "[a]s the proponent of the 'prior acts' evidence proffered to prove intent in a case in which the defendant had not admitted or otherwise stipulated to his or her commission of the *actus reus*, * * * to ensure that the prerequisites of admissibility were satisfied." *Id.* at 8 n 5.

In our view, this case is indistinguishable from *Jones*, save for the fact that defendant actually preserved for appeal whether evidence of his prior bad acts was admissible to prove intent. Here, as in *Pitt*, *Jones*, and *Leistiko*, defendant did not admit committing the *actus reus*, nor was the jury instructed to consider evidence of defendant's prior bad acts only after finding that he committed the charged acts. As described above, after defendant's opening statement but before any witnesses had been presented, the state sought a ruling on the admissibility of evidence that defendant had punched Feinstein during an argument in a trailer in 2007, arguing that the evidence was admissible under *Johns* to prove defendant's intent with regard to the charged crimes, which stemmed from a 2009 incident between the two in the same trailer. By the time the state sought that ruling, defendant's counsel had explained that defendant denied committing the charged acts and would proffer a different version of the 2009 events in question. The trial court, over defendant's objection, allowed the state to introduce evidence of the 2007 incident unconditionally—that is, without any limitation on the jury's use of the evidence. The unconditional admission of the evidence created the same type of risk that the Supreme Court identified in *Pitt* and *Leistiko*, and that required a reversal in *Jones*: that the jury would use the 2007 incident to decide that defendant had a propensity to act violently toward Feinstein and acted in conformity with that propensity in 2009.

Thus, upon further consideration in light of *Pitt*, *Leistiko*, and *Jones*, we now conclude that the trial court erred by unconditionally admitting evidence of defendant's 2007 incident with Feinstein. Because the evidentiary error was not harmless, *see Jones*, 258 Or App at 9 n 6 (identifying the harm resulting from the unconditional admission

of evidence of other crimes), the case must be reversed and remanded.

Reversed and remanded.