373

Submitted March 30, 2015, affirmed July 7, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD WARD CLARKE,
*Defendant-Appellant.*

Deschutes County Circuit Court
10FE1357SF; A152453

379 P3d 674

Peter Gartlan, Chief Defender, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services,

filed the opening brief for appellant. On the supplemental brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the briefs for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction for murder, ORS 163.115, for intentionally beating the victim to death with a baseball bat. Defendant contends that the trial court erroneously admitted prior act evidence that (1) defendant threatened the victim with a baseball bat between seven and 10 days before the murder and (2) that, about a month before the crime, defendant sat on the front porch of his home for several hours ruminating about whether to kill his ex-girlfriend, while holding a baseball bat. The state responds that the evidence was properly admitted. We agree with the state and, therefore, affirm.

Defendant and the victim were roommates; they argued frequently, and the greatest source of animosity between them was the victim's relationship with defendant's ex-girlfriend, Sisson. After defendant and Sisson broke up, Sisson became close friends with the victim and often came over to their apartment to spend time with the victim. The victim ignored defendant's requests to not allow visits by Sisson. As a result, defendant became angry with Sisson and the victim and felt disrespected by their association. The victim told defendant that he had been intimate with Sisson.

Defendant's hostility to Sisson and the victim grew. Defendant would sometimes say that he missed Sisson. At other times, he stated that he would rather she were dead and that he wanted to kill her. Defendant wrote in his journals in graphic detail about killing her.

For about two or three weeks before the murder, defendant repeatedly stated that he wanted to kill the victim, and he talked about beating the victim with a baseball bat "nonstop." During that time, defendant also expressed a general desire to kill a person with a baseball bat. Defendant speculated that, if someone wronged him, hitting that person in the head with a bat would make him feel better. Defendant further said that he would love to hit someone in the head to hear the sound of a head "splitting open from a baseball bat." Defendant also asked a friend to paint a mural of "blood spatter" on his bedroom door so he could

"lay on his bed" and see "what it would look like after he had bashed somebody with a baseball bat." Defendant kept two baseball bats in his apartment, and he nearly always had at least one nearby.

On the night of the murder, defendant's neighbor, Welch, heard shouting coming from the downstairs apartment. The person shouting said, "mother-fucker," "white ass mother-fucker," "back-stabber," "you took everything I have," and "you took my girl." Welch also heard "thrashing and strikes" and the shouter saying, "yeah, yeah" with intensity in between the sound of the strikes. Welch called the police to report the disturbance. Police officers responded, but left without entering defendant's apartment. After the police left, Welch decided to investigate because the fight had "sounded pretty rough." He entered defendant's apartment and discovered the victim lying on the ground with a large wound on the back of his head and blood splattered on the wall. Welch again called the police. The victim died on the way to the hospital. The cause of death was "multiple blunt force blows to the head."

Defendant was implicated in the crime by both physical and circumstantial evidence. The baseball bat was discovered in the bushes along a route that defendant habitually walked. Shortly after the crime, a person matching defendant's description was recorded on a security camera on that route near the location where the bat was discovered. The victim's blood was on the bat and the jacket, pants, and shoes that defendant was wearing on the night of the murder. Defendant had a bruise on his left leg, which was consistent with swinging a blunt object with his right hand. Although Welch did not initially identify defendant as the person he heard shouting, at trial he testified that he was about 85 to 90 percent sure that the voice that he heard was defendant's. Finally, while detained before trial, defendant confessed to three other inmates in the Deschutes County jail.

Prior to trial, the court determined that evidence of two prior acts by defendant was admissible. Defendant assigns error to those determinations. First, in a pretrial hearing on the state's motion *in limine*, the state offered

testimony from Hodgkins, defendant and the victim's one-time roommate, and Richmond, an acquaintance of defendant, that defendant threatened the victim with a baseball bat seven to 10 days before the victim was killed. According to those witnesses, one night, while defendant, the victim, Hodgkins, and Richmond were using drugs in defendant's apartment, defendant suddenly began "wielding" a baseball bat at the victim. The victim retreated to his bedroom and pleaded with defendant to allow him to leave the apartment. Defendant asked the victim to come out of his bedroom. Defendant said, "This is how I get down," and threatened to beat the victim with the bat while swinging it over his head. Defendant was very agitated, angry, and was "yelling at the top of his voice." At one point, defendant swung the bat and hit the outside of the victim's bedroom door. While he was swinging the bat, defendant shattered a light fixture over his head; after that, he calmed down and left the apartment with Richmond. Neither Hodgkins nor Richmond could recall exactly how the altercation started, but both stated that Sisson was the source of the tension between defendant and the victim.

In its motion *in limine*, the state argued that the evidence was admissible to show defendant's "intent and lack of mistake," "motive and plan," and its "effect on the victim" under OEC 404(3)[1] and OEC 404(4).[2] In particular, the state argued that the evidence should be admitted under OEC 404(3) by application of the test in *State v.*

---

[1] Under OEC 404(3),

"[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160;

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

*Johns*, 301 Or 535, 725 P2d 312 (1986).[3] At a pretrial hearing, the state also argued that the evidence was admissible under *State v. Moen*, 309 Or 45, 786 P2d 111 (1990), because evidence of prior threats by a defendant towards a murder victim are relevant to show the defendant's "hostile motive" towards the victim. Further, the state emphasized that both the prior act and the murder involved the use of a baseball bat and that defendant "had an obsession with baseball bats."

Defendant responded that the prior acts evidence was not admissible under *Johns* because *Johns* allows that evidence only when a defendant admits to committing the *actus reus* of the crime but denies a culpable mental state. Defendant asserted that he did not strike the victim with the bat. Defendant further disputed whether the evidence was relevant to show motive, because neither Richmond nor Hodgkins testified about the "basis for the argument" that led to defendant threatening the victim with the bat and, therefore, the state could not connect that evidence with any "particular motive" for the crime. Defendant also argued that the trial court could not admit the evidence without first determining that its probative value was not outweighed by the danger of unfair prejudice under OEC 403.[4]

---

[3] The *Johns* court set out a six-factor test to determine if evidence of prior acts is relevant to show that a defendant acted with a culpable *mens rea* under a "doctrine of chances" theory:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

[4] OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The trial court ruled that the evidence was admissible, and explained its reasoning:

> "So the Court has had an opportunity to review the case law with regard to the events that occurred with regard to [the victim] and the threats that were made by the Defendant to [the victim] and the swinging of the baseball bat. And from the Court's perspective, under all the case law, those acts do come in and they * * * can be introduced against [defendant] for purposes in the trial.
>
> "The acts are relevant proof both of intent, and this act requires proof of intent. It involved the same victim and they are similar in nature as the, what the State is alleging occurred."

The trial court explained that the evidence was also admissible under OEC 404(4) and concluded that it was not required to "do a balancing in terms of the prejudice, the fairness issue to the Defendant unless it's required constitutionally." However, the court also concluded that, "even if I were to do a balancing [under OEC 403], it would not be unduly prejudicial to the Defendant for this evidence to come in. It is relevant and it does come in, and even under a balancing test, it would not be unduly prejudicial."

As evidence of a second prior act, the state elicited deposition testimony from one of defendant's ex-girlfriends, Blair. Blair testified that defendant was very angry with Sisson while they were together and that, about a month before the murder, he had sat on his porch for two or three hours discussing whether to kill Sisson. While holding the baseball bat, defendant wondered whether it was worth going to prison to kill Sisson. Blair further testified that defendant thought that the victim was "messing around" with Sisson and that he had referred to the victim as a "backstabber." During the deposition, defendant objected to the testimony about defendant sitting on the porch and contemplating whether to kill Sisson on the grounds of "403, improper character evidence and relevance."

At the pretrial hearing, defendant reiterated his objections to the evidence on the ground that it was irrelevant and that it was improper propensity evidence. However, defendant did not reiterate his objection to the evidence

under OEC 403 or request that the court balance the probative value of the evidence against its prejudicial effect. The state responded that the evidence was relevant because "the relationship between the victim and * * * Sisson * * * angered [defendant]" and led to the murder. The court ruled that the evidence was admissible, explaining:

> "The fact of the matter is Ms. Sisson is integrally, as [the prosecutor] stated, is she's an integral part of the process. It's the State's theory that, that he killed [the victim] as a result of the contact he was having with Ms. Sisson. And so whether there is animosity towards Ms. Sisson all goes to the whole issue of motive and whether he, what his intent was and whether he had ill will towards Ms. Sisson and [the victim].

> "And then also related to that comes the issue of the bat which comes up in her testimony as well, which again relates to the alleged crime here the State's contending that [defendant] acted upon. So it goes towards the intent, it goes, it shows proof of intent both with regard to Ms. Sisson and with regard to the current crime.

> "There, the two parties are interrelated, Ms. Sisson and [the victim] are inter, interrelated with each other. And we don't know what his intent was in terms of—you know, other than he was talking about it and holding the bat, but we don't know whether he had, his intent was to use the bat."

Defendant was subsequently tried to a jury and found guilty of murder. Evidence of those two prior acts was admitted at trial. On appeal, defendant challenges the admission of the prior acts evidence under OEC 404(3). Defendant relies on *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), which was decided after defendant's trial. There, the court concluded that, in some circumstances, prior acts evidence is not admissible to prove a defendant's intent unless either: (1) the defendant concedes that he or she committed the *actus reus* of the charged crime, but contends that he or she did so without a culpable mental state; or (2) the trial court instructs the jury that they may not consider the prior acts evidence to determine whether the defendant had the requisite intent unless they first find that the state

has proved that the defendant committed the *actus reus* (a "*Leistiko* instruction"). *Id.* at 185-86.

After this case was submitted, the Supreme Court decided *State v. Williams*, 357 Or 1, 24, 346 P3d 455 (2015), in which the court concluded that "OEC 404(4) supersedes OEC 404(3) in a criminal case except to the extent required by the state or federal constitution." The defendant in *Williams* was convicted of two counts of first-degree sexual abuse of a child victim. The trial court admitted evidence that children's underwear had been found in the defendant's home, offered by the state to show that the defendant had touched the victim with a sexual purpose. The defendant argued that the evidence was irrelevant under OEC 401 and inadmissible under OEC 404(3), because it was not relevant to any nonpropensity purpose. *Id.* at 3-4. On appeal, the Supreme Court rejected the defendant's argument and determined that, under OEC 404(4), propensity evidence is admissible in prosecutions for child sexual abuse so long as its admission does not violate the Due Process Clause in the Fourteenth Amendment to the United States Constitution. *Id.* at 17-19. The court further explained that balancing the probative value of the evidence against the danger of unfair prejudice, pursuant to OEC 403, would satisfy due process requirements. *Id.* at 19.

In a supplemental brief, defendant contends that *Williams* does not alter the analysis with regard to the relevance of the prior acts evidence in this case or the need for limiting instructions under *Leistiko*. However, defendant asserts that, under *Williams*, the trial court was required to perform OEC 403 balancing before admitting the prior acts evidence and that it therefore erred in failing to do so.

For its part, the state agrees that *Williams* does not change any analysis of the relevance of the prior acts, but asserts that *Williams* does not require OEC 403 balancing. Instead, according to the state, reversal is compelled only if the admission of the evidence rendered defendant's trial fundamentally unfair, and that determination is made after a more limited form of "due process" balancing. Moreover, the state argues that defendant failed to preserve his OEC 403 arguments, and—with respect to the evidence that

defendant threatened the victim with a baseball bat—the trial court actually engaged in balancing under OEC 403.

Before we resolve defendant's assignments of error, we begin by addressing the effect of *Williams* on this case with respect to any analysis of the relevance of the evidence and the need to balance any probative value of that evidence against any prejudicial effect of its admission under OEC 403 or the Due Process Clause. We agree that *Williams* does not radically alter our evaluation of the relevance of the challenged evidence. Although *Williams* held that OEC 404(4) "supersedes" OEC 404(3), the types of relevant evidence set out in OEC 404(3) ("motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident") remain viable theories for the admission of prior acts evidence. *See State v. Turnidge (S059155)*, 359 Or 364, 434, 374 P3d 853 (2016) (resolving the case "by settled principles under OEC 404(3) and OEC 403"). Thus, in evaluating whether evidence of "other crimes, wrongs or acts" is admissible for nonpropensity purposes, we may draw on the "settled principles" of relevance embodied in OEC 404(3) and case law construing that provision. *Id.* When nonpropensity evidence is sought to be introduced under OEC 404(3), OEC 403 balancing is required "in response to a proper motion." *Id.* at 430.

We now turn to defendant's first assignment of error.[5] Defendant argues that the trial court erred in admitting the evidence that he threatened the victim with a baseball bat seven to 10 days before the murder without providing a *Leistiko* instruction. The state first retorts that defendant's argument is unpreserved because he did not request a *Leistiko* instruction. We disagree.

Although defendant did not request that the court provide a *Leistiko* instruction, defendant argued that the evidence should not be admitted under *Johns* because defendant did not concede the *actus reus* of the crime. In *State v. Hutton*, 258 Or App 806, 817, 311 P3d 909 (2013), another

---

[5] We review the trial court's rulings on the relevance of evidence for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). We review the trial court's application of OEC 403 for abuse of discretion. *State v. Williams*, 313 Or 19, 29-30, 828 P2d 1006, *cert den*, 506 US 858 (1992).

case tried before the Supreme Court decided *Leistiko*, we concluded that the defendant preserved his *Leistiko* challenge for appeal by arguing that other acts evidence should not admitted under *Johns*, because he "denied committing the charged acts." Thus, we conclude that defendant has preserved his *Leistiko* argument for appeal.

On the merits, defendant concedes on appeal that his prior threats to the victim were relevant under *Moen*, 309 Or at 67-69 (evidence of defendant's prior threats to the victim were relevant to show defendant's hostile motive). However, defendant asserts that, because the trial court concluded that the evidence that he threatened the victim with a baseball bat was relevant to prove intent, it was only "conditionally relevant" and could not be considered by the jury until the fact that defendant committed the *actus reus* of the crime was proved. Thus, defendant argues that, because he did not concede the *actus reus*, a *Leistiko* instruction was required. The state responds that no *Leistiko* instruction was required, because the evidence was relevant to defendant's motive and was therefore admissible to prove that he committed the *actus reus*, not just that he did so with a culpable *mens rea*. The state is correct.

As explained in *Turnidge*, a *Leistiko* instruction is required only when evidence of prior acts is admitted to show a defendant's intent in a case where the relevance of that evidence depends on the application of the doctrine of chances. *See Turnidge*, 359 Or at 445 ("[A]lthough a *Leistiko*-styled limiting instruction may be required when prior bad acts evidence is offered to prove 'intent' or 'absence of mistake' under the doctrine of chances theory of relevancy, such an instruction is not required when prior bad acts evidence is admitted for other relevant purposes."). The doctrine of chances is a theory of relevance founded on the proposition that "the more often the defendant performs the *actus reus* [of a crime], the smaller is the likelihood that the defendant acted with an innocent state of mind" when he or she committed the act in the present case. *Johns*, 301 Or at 552 (internal quotation marks omitted). In *Johns*, the defendant admitted to shooting his wife, but he argued that the gun had gone off accidentally. The state offered evidence

that the defendant had assaulted his ex-wife with a rifle, which the trial court admitted. On appeal, the court held that evidence that the defendant had assaulted his ex-wife was relevant to rebut his claim that he had accidentally shot his wife, because the fact that he had previously intentionally done a similar act made it less likely that he had shot his wife without a culpable mental state. *Id.* at 555-56, 559.

Subsequently, in *Leistiko*, the court examined the admissibility of prior acts evidence offered to prove intent where the defendant did not concede committing the *actus reus* of the crime. 352 Or 172. There, the defendant was charged with the forcible rape of three women. The defendant argued that he had had consensual intercourse with all of the victims. *Id.* at 177. The state offered evidence that he had forcibly raped a fourth woman, a crime that was not charged in the case, to show that the defendant had acted with a culpable mental state. The trial court admitted the evidence. *Id.*

On appeal, the state asserted that the evidence was properly admitted under a doctrine of chances theory, arguing that "the similarity between the uncharged offense and each of the charged offenses was sufficient for the fourth woman's testimony to be relevant to prove defendant's intent with regard" to the charged offenses. *Id.* at 182. The Supreme Court rejected that argument, explaining that

> "the doctrine of chances rests on the proposition that the defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider the uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent."

*Id.* at 185. Thus, evidence offered under a doctrine of chances theory is only "conditionally relevant." *Id.* at 186. That is so because evidence that the defendant has repeatedly done some act does not become relevant to show that he or she committed the charged act with the requisite culpable mental state until the charged act has been proved. *Id.* Because

the defendant in *Leistiko* did not concede the act and the trial court did not provide the required limiting instruction, the evidence posed "an unacceptable risk that the uncharged misconduct evidence [would be] admitted to prove the act, not the defendant's mental state." *Id.* at 186; *see also State v. Pitt*, 352 Or 566, 580-81, 293 P3d 1002 (2012) (concluding that the trial court erred in admitting prior acts evidence, without a limiting instruction or concession of the *actus reus*, that he had sexually abused the victim and another child in a different county).

Here, in contrast, the evidence was not offered to show, based on the doctrine of chances, that defendant acted intentionally or voluntarily because he acted intentionally in the same way in the past. Rather, the evidence was relevant to show defendant's hostile motive toward the victim. As the court explained in *Moen*, "a defendant's prior hostile acts toward a homicide victim or toward a class of persons to which the victim belongs" is relevant "to the issue of a hostile motive, which in turn is probative of intent." 309 Or at 68; *see also State v. Hampton*, 317 Or 251, 258, 855 P2d 621 (1993) (evidence of motive is a "relevant circumstantial fact * * * [that] makes more probable the fact that defendant committed the crime than if such a motive were not established").

Thus, the evidence that defendant threatened the victim with a baseball bat seven to 10 days before the victim was bludgeoned to death with a baseball bat was relevant to defendant's hostile motive toward the victim: It tended to show that defendant's animosity toward the victim was so strong that he was moved to engage in violence against him. Its relevance did not depend on the doctrine of chances: It did "not depend on any inference that the defendant had committed similar past acts with sufficient frequency that it becomes increasingly unlikely—with each new act committed—that he committed the act" without a culpable mental state. *Turnidge*, 359 Or at 436-37. Therefore, *Leistiko* is not applicable. *See Turnidge*, 359 Or at 445. Moreover, because that evidence was relevant to prove that defendant committed the charged act, *Leistiko*'s concern that evidence might be used to "prove the act, not the defendant's mental

state" is inapposite.[6] Thus, the trial did not err in admitting the evidence without a *Leistiko* limiting instruction.[7]

Defendant next contends that the trial court abused its discretion in allowing evidence of the threat to the victim because it failed to conduct balancing under OEC 403 after defendant's objection on that basis. He argues that the trial court improperly performed only "cursory" balancing, failing to follow the method established by *State v. Mayfield*, 302 Or 631, 733 P2d 438 (1987).[8] However, as we previously

---

[6] Although evidence of hostile motive is also relevant to prove "intent," as the *Turnidge* court makes clear, there is a distinction between the meaning of intent in a hostile motive case and the meaning of the term in a doctrine of chances case. The doctrine of chances applies to evidence offered to prove "intent" in the sense of "the absence of accident, inadvertence or [causality]." *Turnidge*, 359 Or at 436 (brackets in original; internal quotation marks omitted). In contrast, in a case where evidence of hostile motive is also probative of "intent," the term means that the defendant acted "with a conscious objective to cause the result or to engage in the conduct so described" as provided in ORS 161.085(7). *Id.* at 436-37. Thus, prior acts evidence may be probative of "intent" in many circumstances where the doctrine of chances—and *Leistiko*—does not apply.

[7] We note that the trial court concluded that the challenged evidence was relevant to defendant's "intent" after applying the *Johns* test. The court in *Moen* also applied the *Johns* test before admitting the evidence of the defendant's threat to his victims in that case. *Moen*, 309 Or at 69-70. However, *Turnidge* strongly indicates that the *Moen* court was incorrect in applying the *Johns* framework to the evidence at issue in that case. *Turnidge* states that the *Johns* test applies *only* in doctrine of chances cases. *Moen* was not a doctrine of chances case—the relevance of the prior acts evidence did not depend on the defendant's repetition of similar acts, and the evidence was admitted to show that the defendant had, in fact, committed the crime. Although *Turnidge* does not specifically discuss *Moen*, the court explains that "the particular analytical framework outlined in [*Johns*] was specifically fashioned to determine the relevancy and admissibility of evidence offered to prove a defendant's 'intent or absence of mistake' under the theory of the doctrine of chances[.]" *Turnidge*, 359 Or at 435. Here, to the extent that the trial court erred in applying *Johns*, we conclude that the evidence was nevertheless relevant and admissible for the reasons discussed above. *See State v. Nielsen*, 316 Or 611, 629, 853 P2d 256 (1993) ("Where a trial judge makes a correct ruling admitting evidence but articulates an erroneous reason for it, there is no need to reverse.").

[8] The *Mayfield* court set out the following test:

"In making this decision under OEC 403, the judge should engage in four steps. First, the trial judge should assess the proponent's need for the uncharged misconduct evidence. In other words, the judge should analyze the quantum of probative value of the evidence and consider the weight or strength of the evidence. In the second step the trial judge must determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime. The third step is the judicial process of balancing the prosecution's need for the evidence against the countervailing prejudicial danger of unfair

explained, *Mayfield* "is a matter of substance, not form or litany." *State v. Brown*, 272 Or App 424, 433, 355 P3d 216, *rev den*, 358 Or 145 (2015). Thus, a trial court does not abuse its discretion in failing to expressly follow the *Mayfield* analysis if "the record establishes that, in deciding to admit [the evidence], the trial court considered the matters prescribed in *Mayfield*." *State v. Borck*, 230 Or App 619, 637, 216 P3d 915, *adh'd to as modified on recons*, 232 Or App 266, 221 P3d 749 (2009), *rev den*, 348 Or 241 (2010). That will be so where "the totality of the attendant circumstances indicate that the court * * * engage[d] in the conscious process of balancing the costs of the evidence against its benefits that *Mayfield* requires." *Id.* at 638 (internal quotation marks omitted); *see also Turnidge*, 359 Or at 443 (concluding that the trial court did not abuse its discretion despite not "specifically articulat[ing] its findings in terms of the 'probative' versus 'prejudicial' value of the evidence," but did "refer to factors that play into the balancing analysis" and also noted that, if it decided to admit the evidence, "the balancing test set out in OEC 403 * * * would apply").

Here, even though the trial court ruled that balancing was not required, the court nevertheless concluded that the evidence would still be admissible under OEC 403. Although its discussion was brief, the record reveals that the trial court engaged in a conscious process of balancing the costs and benefits of the evidence. The court made findings on the probative value of the evidence: The court found that the prior act evidence was similar to the crime, noting that the "nature" of the conduct was similar and the victim was the same. *See Turnidge*, 359 Or at 443 (characterizing the trial court's findings on the "high degree of similarity" between the prior act and the charged crime as findings on the probative value of the prior acts evidence for OEC 403 balancing); *see also State v. Kaylor*, 252 Or App 688, 702, 289 P3d 290 (2012), *rev den*, 353 Or 428 (2013) ("'[A]ny similarity in the circumstances increases the probative value of prior crime evidence * * *.'" (Quoting *State v. Johnson*, 340

prejudice, and the fourth step is for the judge to make his or her ruling to admit all the proponent's evidence, to exclude all the proponent's evidence or to admit only part of the evidence."

302 Or at 645.

Or 319, 340, 131 P3d 173, *cert den*, 549 US 1079 (2006).)). Additionally, the court's conclusion that the evidence was not "unduly prejudicial" reveals that the court weighed the costs of the evidence against its benefits.

The court's findings and conclusions are amply supported by the record. The evidence was highly probative; there was a high degree of similarity between the threats to the victim and the crime, and it was also close in time to the murder. As such, the prior act "foreshadow[ed] [the] commission" of the charged crime. *Kaylor*, 252 Or App at 704. Additionally, as evidence of hostile motive, it also tended to explain the reason that defendant killed the victim. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the probative value outweighed any prejudicial effect.

Turning to defendant's second assignment of error, defendant contends that the trial court erred in admitting the evidence that defendant sat on the porch and ruminated about killing Sisson. Defendant first asserts that the evidence was improperly admitted because it was not relevant to prove his motive or intent. Defendant argues that the evidence was not relevant because his conduct in holding the bat while sitting on the porch was not sufficiently similar to the eventual murder, and he did not mention the victim while weighing the costs and benefits of killing Sisson. The state responds that the evidence was relevant to show his motive and was properly admitted for that purpose.

We conclude that the state is correct. To start, defendant's argument that the evidence was not sufficiently similar to the charged incident is unavailing. Where prior act evidence is offered to prove motive, it "need not have the same physical elements as the crime charged." *State v. Garrett*, 350 Or 1, 10, 248 P3d 965 (2011) (citing *Hampton*, 317 Or 251); *see also Turnidge*, 359 Or at 442 n 43 (same). Rather, evidence is relevant to prove motive if it tends to show *why* the defendant committed the charged crime, even if the prior acts are entirely dissimilar from the charged crime. *See, e.g., State v. Bracken*, 174 Or App 294, 302-04, 23 P3d 417, *rev den*, 333 Or 162 (2001) (evidence that defendant ran a large marijuana growing operation in his home was

relevant to defendant's motive for killing the victim—"to guard against the discovery and looting of the operation by others or its disclosure to authorities"—regardless of its dissimilarity to the charged crime). Thus, the dissimilarity between the prior act and the charged crime does not affect the relevancy of the prior acts evidence.

The fact that defendant did not mention the victim while ruminating about killing Sisson does not mean that the evidence was not relevant to defendant's motive. For evidence of motive, the state must establish "some sort of logical connection" between the evidence and the crime, but "to establish relevancy, the state need not affirmatively prove 'why' the [challenged evidence] made it more likely that [the defendant] committed the crime[]." *Turnidge*, 359 Or at 450. Rather, "the required connection can be inferred when the nature of the evidence at issue, evaluated in light of the circumstances of the crime, makes the inference a logical one." *Id.* (citing *Hampton,* 317 Or at 258); *see also Hampton,* 317 Or at 256 ("'[E]vidence may still be relevant even though it's only an *intermediate* fact requiring another inference or two.'" (Quoting Herbert Peterfreund, *Relevancy and Its Limits in the Proposed Rules of Evidence for the United States District Courts: Article IV,* 25 Rec. Ass'n B. City N.Y. 80, 81 (1970). (Emphasis in original.))).

Thus, the evidence that defendant ruminated about killing Sisson on the porch is not irrelevant simply because the jury would have had to infer its connection to the charged crime by viewing the evidence in the context of the rest of the state's case. Alongside the state's other evidence—including defendant's anger at the victim for bringing Sisson to their apartment and the victim's statement to defendant that he had been intimate with Sisson—a jury could infer that defendant spent his time contemplating whether to kill Sisson because he was angry about the end of their relationship and, further, that he would have been moved by that same anger to kill the victim due to his jealousy of the victim's relationship with Sisson. Accordingly, the evidence helped to explain why defendant killed the victim, and, therefore, the trial court did not err in concluding that the evidence was relevant to defendant's motive.

Defendant next argues that, even if the evidence was relevant, the trial court nevertheless erred in failing to provide a *Leistiko* instruction. The state responds that defendant's argument is unpreserved. We agree with the state. In contrast to defendant's first assignment, here, defendant did not argue below that the evidence was irrelevant because he did not admit to the *actus reus*. Instead, he contended only that it was not relevant for a nonpropensity purpose. That is not sufficient to preserve defendant's appellate argument. *See State v. Jones*, 258 Or App 1, 4-5, 308 P3d 347 (2013) (defendant did not preserve his *Leistiko* challenge where his "sole argument before the trial court in opposing the admissibility of that evidence was that it did not meet certain of *Johns*'s criteria (*viz.*, the third, fourth, and fifth requisites)" and "did *not* argue that the *Johns* methodology was categorically inapplicable for any reason" (emphasis in original)).

Defendant further contends that the trial court plainly erred in admitting the evidence without a *Leistiko* instruction. We easily reject that contention. To qualify as plain error, an error must satisfy three factors: (1) it must be one of law; (2) it must be apparent, meaning that "the point must be obvious" and "not reasonably in dispute"; and (3) it must appear on the record, meaning that "the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

Defendant's plain error challenge fails on the second factor; any error in this case was not obvious for the reasons discussed earlier. The state's theory of relevance for the porch evidence was not that the repetition of some act made it unlikely that defendant struck the victim with the baseball bat without a culpable mental state. Instead, it was that the evidence tended to show why defendant would have killed the victim. Thus, the "doctrine of chances" did not apply, and no limiting instruction would have been required under *Leistiko*. *See Turnidge*, 359 Or at 445 (*Leistiko* instructions are not required where evidence is not offered to prove intent under a doctrine of chances theory).

Finally, defendant argues that the trial court erred in failing to perform OEC 403 balancing with respect to the porch evidence. However, defendant did not preserve that argument for appeal. During Blair's deposition, defendant objected to Blair's testimony that defendant sat on his porch and discussed whether to kill Sisson based, in part, on OEC 403. However, defendant did not request OEC 403 balancing before the trial court, either when the court considered the parties' deposition objections during a pretrial hearing, or when the state played Blair's videotaped deposition to the jury. Accordingly, because defendant did not seek a ruling from the trial court and the trial court did not make such a ruling, the issue is not preserved. *Cf. State v. McMullin*, 269 Or App 859, 860 n 2, 346 P3d 611, *rev den*, 357 Or 640 (2015).

Defendant does not request that we review the trial court's failure to perform OEC 403 balancing for plain error, and we therefore decline to undertake that analysis. *Cf. State v. Ardizzone*, 270 Or App 666, 672-73, 349 P3d 597, *rev den*, 358 Or 145 (2015) (declining to consider an unpreserved *Leistiko* argument and noting that, although we had previously "reviewed challenges brought under *Leistiko* as. 'plain error,'" in that case the "[d]efendant does not request plain error review * * *, and we therefore do not undertake that analysis"); *State v. Bigelow*, 238 Or App 344, 348, 242 P3d 719 (2010), *rev den*, 350 Or 130 (2011) ("Defendant does not assert that the arguments she makes on appeal demonstrate errors of law that are reviewable as apparent on the face of the record. Accordingly, we do not address that issue.").[9]

---

[9] Even were we to understand defendant's claim of error as an implicit request for plain error review, *see State v. Zavala*, 276 Or App 612, 616-17, 368 P3d 831 (2016) ("Although defendant did not request OEC 403 balancing in the context of his challenge below to admission of the evidence under OEC 404(4), as required by *Williams*, his request for reconsideration in light of *Williams* constitutes a request that we review for error apparent on the face of the record. ORAP 5.45(1)."), we would not exercise our discretion to correct any purported error. Under *Ailes*, 312 Or at 382 n 6, we consider several factors in determining whether to exercise our discretion to correct plain error, including "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way." Here, the evidence of defendant's hostility toward Sisson was cumulative.to much of the other evidence of defendant's

In sum, we reject both of defendant's assignments of error. The trial court did not err—much less plainly err—in failing to provide *Leistiko* instructions before admitting prior acts evidence that was not admitted under a doctrine of chances theory. Furthermore, with respect to defendant's first assignment of error, the trial court adequately performed OEC 403 balancing, and, with respect to defendant's second assignment of error, defendant does not request plain error review, and we therefore decline to consider his unpreserved OEC 403 challenge.

Affirmed.

---

hostility toward Sisson and use of a baseball bat while expressing hostility. Thus, admission of the porch evidence was harmless. Further, defendant expressly made an OEC 403 objection to the other prior act evidence and expressly failed to renew any OEC 403 objection to the porch evidence. The ends of justice do not require relief from the consequences of that choice.