Argued and submitted January 14, order of circuit court affirmed and case remanded for further proceedings March 10, 2011

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

MICHAEL GARRETT,
*Defendant-Respondent.*

(CC081235272; SC S058620)

248 P3d 965

Alicia Fuchs, Judge.

Jennifer S. Lloyd, Assistant Attorney General, Salem, argued the cause for plaintiff-appellant. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Laurie Bender, Laurie Bender P.C., Portland, argued the cause for defendant-respondent. With her on the brief was Ralph H. Smith, Jr.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

Defendant is charged with six counts of aggravated murder, ORS 163.095, and one count of intentional murder, ORS 163.115, for the 1988 murder of Loretha Williams. Before trial, defendant filed a motion *in limine* to exclude evidence relating to defendant's convictions for the 1990 assault of Lizette Moore. The trial court granted defendant's motion. The state appealed directly to this court under ORS 138.060(2),[1] seeking reversal of the trial court's order. As we explain below, we affirm the trial court's order.

Loretha Williams was murdered in 1988. Williams had been a single working mother who also sold cosmetics and "dime bags" of marijuana out of her home in Northeast Portland. Detectives found Williams's body in her residence naked from the waist down. There was a lamp cord loosely wrapped around Williams's neck, and stab wounds to her chest and abdomen. The medical examiner later determined that the cause of death was both strangulation and stabbing. The lamp cord and two knives were recovered at the crime scene.

In the initial investigation of the Williams homicide, detectives found no evidence of forced entry and nothing appeared to have been taken from the residence—Williams's checkbook, $300.00 dollars in cash, and her jewelry were undisturbed. The investigation revealed that, before her death, Williams had been seen by a number of people selling "dime bags" of marijuana out of her home; however, only a small amount of marijuana and associated paraphernalia were found at the crime scene.

Police discovered defendant's name and telephone number on a small card in the victim's house. Detectives interviewed defendant and he admitted purchasing marijuana from Williams. However, he denied any involvement

---

[1] ORS 138.060(2) provides, in part:

"Notwithstanding subsection (1) of this section, when the state chooses to appeal from an order listed in paragraph (a) or (b) of this subsection, the state shall take the appeal from the circuit court to the Supreme Court if the defendant is charged with murder or aggravated murder. The orders to which this subsection applies are:

"(a)  An order made prior to trial suppressing evidence[.]"

with Williams's murder or of being inside her residence at any time. When the homicide occurred, defendant lived just blocks away from Williams. No charges were filed against defendant at that time.

In 1990, 17 months after the Williams homicide, defendant knocked on the door of Lizette Moore, his neighbor, and asked to use her telephone. Moore was a single working mother who lived across the street from defendant and within five blocks of where Williams had been killed. After making his telephone call, defendant attacked Moore with a three-pound-iron dumbbell, hitting her several times on the head and stopping only when Moore feigned unconsciousness. Moore, however, saw defendant take her purse. Moore's daughter called 9-1-1, reported the assault, and identified defendant as the assailant. Police later found the dumbbell and a knife in the room where defendant had assaulted Moore. However, it appeared that only the dumbbell had been used during the assault. Soon after the assault, police located defendant in the neighborhood and Moore identified him as her attacker. Defendant told the detectives that he had known Moore for several years and that he had been in her house a week before, but denied any involvement in the assault of Moore. Defendant's blood-stained clothing later was discovered at his sister's residence. Defendant was charged and convicted of attempted murder, first-degree assault, first-degree robbery, and first-degree burglary in the Moore case.

In 2002, following scientific advances in DNA testing, the knives and the lamp cord recovered in the Williams case were again tested. Blood from a knife handle revealed DNA that police later associated with an unsolved rape case in Texas. Police determined that DNA evidence on the lamp cord was defendant's, and that the frequency of defendant's DNA profile was one in 469 million African-American persons. As a result of that DNA match, detectives reopened the Williams case and reinterviewed defendant. Defendant made statements to detectives that were consistent with those that he had made in 1988.

In 2008, police arrested defendant for the Williams homicide. At that time, a detective asked defendant to identify his motive for his attack on Moore. Defendant responded

that he had attacked Moore as part of a plan to rob her of drugs that he believed she was holding in her residence for local gang members. Moore, however, denied any involvement with drugs, and the detectives had found no evidence, aside from defendant's own statement, that pointed to Moore's involvement with drugs.

Before trial, defendant filed a motion *in limine* to exclude evidence of the attack on Moore and requested a hearing on the motion. For its part, the state moved to admit the evidence pursuant to OEC 404(3). The state intended to offer, in its case-in-chief, certified copies of defendant's convictions in the Moore case—attempted murder, first-degree assault, first-degree robbery, and first-degree burglary—as well as the testimony of Moore and the detective investigating the Williams murder. According to the state, the evidence was admissible to prove that defendant's motive and intent had been to burglarize Williams's residence and rob her. The state argued that the evidence was therefore admissible under OEC 404(3), which we set out below.

Following a hearing, the trial court concluded that evidence of defendant's crimes against Moore was not admissible to prove defendant's motive or intent in the Williams case. The trial court reasoned that "[t]he fact that the officer who testified as to [defendant's] statement about the 1990 burglary/assault used the term 'motive' in his questioning of [defendant] does not in fact make it a motive." The trial court found that defendant's 1990 convictions were essentially character evidence that the jury might impermissibly use to conclude that defendant was a bad person or that, having committed crimes against Moore, it was likely defendant also had murdered Williams. The trial court went on to conclude that, in any event, under OEC 403, the evidence that the state sought to admit would, on balance, be more prejudicial than probative.[2]

---

[2] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

As noted, the state appealed the trial court's ruling directly to this court. The state now argues that the trial court erred in concluding that the evidence was essentially character evidence and therefore irrelevant for any noncharacter purpose.

At the outset, we note that the state does not seek to admit the evidence of defendant's crimes against Moore to prove that defendant intentionally committed the Williams homicide. Rather, the state seeks to admit the evidence as part of its proof that defendant intended to burglarize and rob Williams and that defendant murdered Williams in furtherance of those crimes. Accordingly, we focus our relevance analysis on the issues of intent and motive to commit robbery or burglary.[3] The burden to show that the evidence is relevant in that regard is on the state. *See State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990) (burden on party offering evidence to show evidence is relevant and probative of something other than disposition to do evil). We review questions of relevance for errors of law. *See State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999) (relevance determination reviewed for errors of law).

OEC 404(3) allows for the introduction of other crimes, wrongs, or acts as proof, *inter alia*, of intent or motive. OEC 404(3) provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *State v. Johns*, 301 Or 535, 544, 725 P2d 312 (1986), this court observed that OEC 404(3) is a rule of inclusion, permitting the introduction of other crimes evidence as long as the evidence is relevant for a noncharacter purpose. However,

---

[3] An earlier indictment in this case included one count of first-degree robbery, ORS 164.415, and one count of first-degree burglary, ORS 164.225. Those charges were dismissed following a successful demurrer on statute-of-limitation grounds. The parties do not address or identify any relevancy issues arising from the fact that defendant cannot be convicted in this case of either robbery or burglary because the statute of limitations has expired on both crimes. In any event, we express no opinion in that regard.

evidence of other crimes may not be introduced solely to prove that, because of defendant's character, it is more probable that defendant committed the crime for which he is on trial. *State v. Johnson*, 313 Or 189, 194, 832 P2d 443 (1992). In *Johns*, this court concluded that, to properly admit other crimes evidence as proof of intent, a court must consider the following six questions:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

*Id.* at 555-56. The first five questions relate to the issue of relevance. *Pratt*, 309 Or at 211. In applying the *Johns* test, this court has stated that only if the answer to each of the first five questions is yes—leading to the conclusion that the evidence is relevant for a noncharacter purpose—should the court proceed to the sixth question and weigh the probative value and the prejudicial effect of the evidence under OEC 403. *Id.*

Because defendant concedes that questions one, two, and, arguably, three of the *Johns* test can be answered affirmatively, we do not consider them further. With regard to questions four and five—the similarity between the acts perpetrated in each crime and their physical elements—the state asserts that both acts are of sufficient similarity to permit the admission of defendant's crimes against Moore. According to the state, both crimes were brutal attacks against single mothers who lived within close proximity to defendant, and defendant knew each of them.

In determining whether the physical elements of the prior acts and the present acts are sufficiently similar to warrant their admission into evidence, this court has observed:

> "The circumstances of each crime as a whole must be compared. First the trial judge must find that there are significant similarities in the physical elements of the two crimes. If that test is met, then the trial judge must consider the differences between the physical elements of the two crimes. The differences may be minimal—for example, the offender may have used different words to indicate his intent. On the other hand, the differences may be so great that they overwhelm the similarities. The point is: The dissimilarities must be as fully considered as the similarities in answering this question.
>
> "Determining what constitutes a significant similarity is a matter to be decided on a case-by-case basis. Some similarities are so common as to be trivial (for example, the offender spoke English during both crimes) while others may be so unusual as to be significant even standing alone (for example, the offender spoke a foreign language when he intended to rape, but spoke English otherwise). Most often the significance of the similarities will arise out of their combination."

*Pratt*, 309 Or at 214.

Consistently with this court's observation in *Pratt,* we now compare the circumstances of the separate crimes. The assault on Williams involved strangulation with a lamp cord, and stabbing with a knife, and she was left naked from the waist down with her undergarments torn off. Nothing appeared to have been stolen or was missing from Williams's residence. DNA evidence suggested that Williams may have been attacked by more than one perpetrator. In contrast, although defendant claimed that Moore was holding drugs for local gang members, no drugs were found at Moore's residence, defendant assaulted Moore with a three-pound-iron dumbbell, and he stole Moore's purse.

Despite the physical differences between the crimes that we just described, the state asserts that, although no large amounts of drugs were found in Williams's residence, she was known in her neighborhood as a marijuana dealer. According to the state, it is therefore permissible to infer that

drugs were present in the Williams residence and that those drugs were stolen when Williams was murdered. We reject the state's assertion. There is nothing in the record to establish that a robbery or burglary was committed during the Williams homicide. Instead, the record shows that nothing was missing from Williams's residence and that Williams's checkbook, cash, and jewelry were undisturbed. The state's assertion that Williams's marijuana was stolen is based on a detective's testimony that it is common for drug dealers to possess large quantities of marijuana and that detectives were surprised that only a small amount of marijuana was found in Williams's residence. The detective's experience that drug dealers usually have large quantities of drugs on hand is insufficient in this context to give rise to a permissible inference that the person or persons who murdered Williams did so in the course of burglarizing and robbing Williams of a large quantity of marijuana. In light of the evidence of sexual assault and the absence of any evidence of robbery or burglary, the state's claim that a robbery or burglary took place in furtherance of the Williams homicide is mere conjecture. Consequently, the state has not met its burden to show that the evidence of defendant's crimes against Moore is probative of anything in this case other than establishing defendant's disposition to engage in criminal conduct. *See State v. Johnson*, 340 Or 319, 338, 131 P3d 173 (2006) (other crime evidence admissible as long as chain of logical relevance connecting other crime does not ultimately rely on an inference relating to defendant's character or propensity). The trial court correctly concluded that defendant's assault on Moore was not relevant for the noncharacter purpose of proving defendant's intent to commit burglary and robbery in this case.[4]

We turn next to the question whether the evidence at issue here is relevant under OEC 404(3) to prove motive.[5]

---

[4] Because we agree with the trial court's conclusion that the other crimes evidence is not relevant, we do not need to consider the correctness of the trial court's additional determination that any probative value of the other crimes evidence was substantially outweighed by the danger of unfair prejudice.

[5] In *State v. Walker*, 244 Or 404, 411-12, 417 P2d 1004 (1966), this court defined motive as "a cause or reason that moves the will and induces action, and inducement which leads to or temps the mind to commit an act." (Citations omitted.)

Essentially, the state makes the same arguments that it did regarding intent, *i.e.*, that defendant's motive was to burgle and rob Williams of drugs and that Williams was murdered in the course of those crimes.

With regard to motive, the state relies on *Johnson*, 313 Or at 194, and *State v. Hampton*, 317 Or 251, 855 P2d 621 (1993), cases in which this court used a three-part test—the first two parts of which are relevancy considerations and the third part of which involves the OEC 403 balancing test—to determine the admissibility of other crimes evidence to prove motive.[6]

In *Hampton*, the defendant was charged with assaulting a police officer. The "other crimes evidence" at issue in *Hampton* was evidence that the defendant was on parole at the time of the alleged assault, that he had not been in contact with his parole officer, and that there was an outstanding warrant for his arrest for a parole violation. Using the three-part test established in *Johnson*, this court agreed that evidence of the defendant's parole status was relevant to prove motive for the assault, *i.e.*, that the defendant had resisted and assaulted the police officer to avoid apprehension and revocation of his parole.

*Hampton* thus demonstrates that other crime evidence need not have the same physical elements as the crime charged to be admissible as motive evidence. That observation does not aid the state here. Under both the *Johns* test for intent and the *Hampton* test for motive, it remains the rule that, to be admissible, other crimes evidence must be relevant for a noncharacter purpose.

As explained earlier, there simply is insufficient evidence in this record that either a burglary or robbery

---

[6] In *Hampton*, this court quoted the three-part test established in *Johnson*:

" '(1) The evidence must be independently relevant for a noncharacter purpose [such as, in this case, proof of motive]; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403. Each of these requirements must be satisfied before uncharged misconduct evidence is admissible under OEC 404(3).' "

*Id.* at 254 (quoting *Johnson*, 313 Or at 195) (alternation in original).

occurred in connection with the Williams homicide. Therefore the evidence of defendant's other crimes against Moore has no logical relevance—the evidence does not tend to prove that defendant intended or was motivated to commit robbery or burglary in connection with the Williams homicide. For the same reasons that we have concluded that the evidence of defendant's crimes against Moore is not relevant to prove defendant's intent to burgle and rob Williams, we also conclude that the trial court correctly rejected the state's argument that the other crimes evidence was relevant to prove defendant's motive in this case.

The order of the circuit court is affirmed and the case is remanded for further proceedings.