Argued and submitted December 10, 2019, reversed and remanded May 12, petition for review denied September 16, 2021 (368 Or 561)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAIME ALFREDO TINOCO-CAMARENA,
*Defendant-Appellant.*

Washington County Circuit Court
C150795CR; A165374

489 P3d 572

Defendant appeals from a judgment convicting him of one count of aggravated murder, ORS 163.095(2)(d), and one count of unlawful use of a weapon, ORS 166.220(1)(a). Defendant, in part, challenges the admission of specific other-acts evidence describing his rape of a different victim, which the trial court admitted for the purpose of demonstrating defendant's asserted motive to rape the victim in this case. Defendant challenges that evidence as impermissible propensity evidence in violation of OEC 404(3). *Held*: The trial court erred in admitting specific, descriptive evidence of defendant's rape of another victim, because it relied upon impermissible character-based reasoning in violation of OEC 404(3). Accordingly, that evidence—in particular the extensive testimony from the rape victim, photos of the rape victim, and testimony from the investigating detective regarding the rape—should have been excluded.

Reversed and remanded.

Kirsten E. Thompson, Judge.

Marc D. Brown, Deputy Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Rhett G. Fraser filed the brief *amicus curiae* for Oregon Justice Resource Center.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

**DeVORE, P. J.,**

Defendant, who was 17 years old at the time of the crimes, appeals from convictions on one count of aggravated murder, ORS 163.095(2)(d) (2013),[1] and one count of the unlawful use of a weapon, ORS 166.220(1)(a). Under Measure 11, he was tried as an adult. The jury determined that defendant should be sentenced to life without the possibility of parole. ORS 163.150 (2013).[2]

On appeal, defendant raises four assignments of error. We write to address defendant's second assignment, in which he challenges the admission of specific other-acts evidence describing his rape of a different victim. We agree with defendant that the admission of the challenged other-acts evidence was dependent upon impermissible character-based reasoning in violation of OEC 404(3). Accordingly, we reverse and remand defendant's conviction.

We reject without discussion defendant's first assignment of error, in which he asserts that the trial court abused its discretion when it denied defense counsel's request that defendant be re-evaluated for fitness to proceed.

Because we reverse and remand, we do not reach the merits of defendant's third and fourth assignments of error, in which he asserts that a jury instruction and his sentence of life without the possibility of parole violate the Eighth Amendment to the United States Constitution based on the principles expressed in *Montgomery v. Louisiana*, 577 US 190, 136 S Ct 718, 193 L Ed 2d 599 (2016), and *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012).[3] As it happens, recent statutory amendments exclude the possibility of a sentence of life without the possibility of parole for juveniles with "sentences imposed on or after

---

[1] The version of the statute in effect at the time of the crime was ORS 163.095 (2013), *amended by* Or Laws 2015, ch 614, § 149; Or Laws 2019, ch 635, § 1. All references in this opinion are to the 2013 version.

[2] The version of the statute in effect at the time of the crime was ORS 163.150 (2013), *amended by* Or Laws 2017, ch 359, § 4; Or Laws 2019, ch 635, § 5. All references in this opinion are to the 2013 version.

[3] The Supreme Court has recently issued another decision, *Jones v. Mississippi*, ___ US ___, 141 S Ct 1307 (2021), discussing the principles in *Montgomery* and *Miller*.

January 1, 2020." *See* Or Laws 2019, ch 634, §§ 5, 24, 32. Therefore, if defendant were convicted after retrial, he would not be subject to the possibility of a sentence of life without the possibility of parole. The issues posed by defendant's third and fourth assignments will not arise again on remand.

We review a trial court's determination of whether other acts evidence is relevant for a nonpropensity purpose under OEC 404(3) for errors of law. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017).

Shortly after 5:00 p.m. on August 19, 2014, a man called 9-1-1 to report that a woman, N, had been stabbed. The caller, a resident at an apartment complex in Portland called the Commons at Timber Creek ("Timber Creek"), testified that, as he and his wife came down the stairs of their apartment building and walked toward the parking lot, he heard a scream. He looked to his right, and he saw N running toward them, saying, "He stabbed me, he stabbed me." N told the couple that she did not know her attacker but that he was wearing camo pants and a black hoodie. N died moments later. Following an autopsy, a state medical examiner found that N had no defensive wounds and that she died from a single stab wound to her heart.

N had worked at Timber Creek as a leasing consultant. As part of her duties on August 19, she had been driving a golf cart around the complex to deliver lease renewal letters. Along with each letter, N had been delivering a balloon tied to a package of popcorn for each applicable resident. As she made the deliveries, N marked each apartment on a map stored in the golf cart. Based on N's notations on the map and the time when the apartment residents heard N screaming, detectives determined that the attack likely occurred in a specific stairwell breezeway at Timber Creek.

During the investigation by the Washington County Sherriff's Office, several witnesses reported seeing a suspicious young male dressed in some form of a black hoodie and camo pants in the vicinity of Timber Creek around the time of the attack. Combining the reports and timelines of each sighting, detectives deduced the path that the suspect took into and out of Timber Creek. The detectives, working with

one of the witnesses, released a sketch of the suspect around September 15, 2014.

A few days later, Detective Roth from the Eugene Police Department contacted Officer George of the Washington County Sheriff's Office, who was leading the investigation of N's murder. The Eugene detective believed that the person in the sketch resembled defendant. On September 13, 2014, defendant had assaulted and raped a woman, H, admitted it, and was in custody in Eugene. Officer George discovered that defendant lived in an apartment building directly across the road from Timber Creek. About five days later, Officer George drove to Eugene and interviewed defendant. Although defendant denied involvement with N's murder during that initial interview, defendant remained the lead suspect.

The day following that interview, Officer George visited defendant's apartment where he lived with his parents. In defendant's bedroom, Officer George found a black hoodie and camo pants matching the witnesses' descriptions.

Defendant pleaded guilty to the assault, rape, and kidnapping of H, and, on March 23, 2015, was sentenced. After sentencing, Detective Roth visited defendant. Defendant admitted to stabbing N. Roth called George to let him know that defendant was willing to talk about N's murder. George drove to Eugene and joined Roth's interrogation of defendant that same day.

Over the course of those interviews, defendant admitted to stabbing N, but he said that he "didn't mean to do it." Yet, when asked why he attacked N, defendant said that he left his apartment with a knife that day because he "needed to see what [killing someone] felt like." He said that, once he crossed the street from his apartment and arrived at Timber Creek, he saw N park the golf cart and carry a balloon and small package up to a second-floor unit. As N went up the stairs, defendant ducked down behind the golf cart. He then ran toward the stairs as N came back down, took a deep breath, and stabbed her. Defendant said that he chose N because she looked like "easy prey." When asked whether he was trying to rape N as he had raped H, defendant responded, "Oh, I was thinking about doing the same.

I was going to do the same." Defendant said that he did not rape N, because she "screamed real loud" as he stabbed her, so he ran away.

On March 31, 2015, a grand jury charged defendant by indictment with one count of aggravated murder and one count of the unlawful use of a weapon. Defendant pleaded not guilty.

Once before trial and again during trial, defendant objected to the admission of particular testimony and exhibits describing the circumstances of defendant's assault, rape, and kidnapping of H in Eugene.[4] Defendant argued that extensive testimony by H regarding the attack and her trauma, photos of H's injuries, and testimony from Roth would be impermissible character evidence and more prejudicial than probative. The trial court denied defendant's pretrial motion and his objection during the trial. The court admitted the evidence for the noncharacter purpose of showing that defendant's motive and intent were to rape N when he attacked her.

At the conclusion of the initial phase of the trial, the jury unanimously found defendant guilty of aggravated murder and the unlawful use of a weapon against another. In the penalty phase, the jury had two choices: life without the possibility of parole or life with the possibility of parole after 30 years. ORS 163.150(2)(a); ORS 163.105 (2014).[5] The jury determined that there were not sufficient mitigating circumstances to warrant a life sentence with the possibility of parole after 30 years. The trial court merged the weapon verdict into the aggravated murder verdict and sentenced defendant to a term of life imprisonment without the possibility of parole, as provided in ORS 163.150(2)(a).

We begin our analysis with the evidentiary rules on which the parties' arguments are based. Evidence is

---

[4] Based on the record and defendant's arguments on appeal, it does not appear that defendant challenges on appeal the admission of the basic fact of his other convictions or his admissions relating those offenses to the charged offenses (described below).

[5] The version of the statute in effect at the time of the crime was ORS 163.105 (2014), *amended by* Or Laws 2015, ch 820, § 45; Or Laws 2019, ch 634, § 27. All references in this opinion are to the 2014 version of the statute.

relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401; *State v. Skillicorn*, 367 Or 464, 475, 479 P3d 254 (2021). Generally, if evidence is relevant, it is admissible unless it is prohibited by law or another provision in the Oregon Evidence Code. OEC 402.

One such limitation is OEC 404. In relevant part, OEC 404(3) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." However, OEC 404(3) allows admission of evidence that might otherwise be construed as character evidence if it is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Another limitation is provided in OEC 403. It provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 403.

On appeal, defendant renews his argument that particular evidence of defendant's attack on another victim, H—specifically, photographs of her injuries, her testimony, and the testimony of the lead detective—was impermissible character evidence prohibited by OEC 404(3).[6] Defendant argues that the only purpose the evidence served was to show that defendant is the type of person who attacks women in order to rape them and thus, because of that character, defendant attacked N. Even if the evidence were permissible nonpropensity evidence, defendant asserts that the proffered evidence was unduly extensive, detailed, and cumulative, making such evidence impermissible under OEC 403.

The state responds that the trial court properly admitted evidence of the subsequent attack under OEC 404(3) as nonpropensity evidence of defendant's motive and

---

[6] *See* 311 Or App at 299 n 4 (regarding evidence of conviction and admissions not challenged on appeal).

intent when he attacked N. The state argues that evidence of the Eugene attack was not used to show that defendant had the propensity to commit murder, but to show defendant's motive and intent for violent sexual gratification when attacking N. Specifically, the state argues that the evidence shows defendant's intent to rape N in the course of that assault.[7] The state urges that such evidence was not unduly prejudicial because the evidence does not rise to the level of "unfair prejudice," and because the trial court gave the jurors a limiting instruction specifically directing them to consider the evidence of the Eugene attack only for motive and intent purposes.

To aid in our analysis, we describe generally the other acts and then the particular evidence challenged. As previously stated, on September 13, 2014, about a month after the murder of N, defendant attacked H. H testified that, after a football game, she was walking alone down a street near the stadium and she sensed someone following her. She turned around and saw a stranger, later identified as defendant. She crossed the street with the hope that defendant would stop following her. The next thing H remembered was that she had been dragged into some nearby bushes, where defendant beat her until she stopped fighting. Then he raped her. Defendant was apprehended that day and, later, pleaded guilty to the kidnapping, assault, and rape of H.

The state's theory in support of admission of the evidence is that the attack on H shows defendant's sexual purpose or motive in attacking N. The state points to defendant's statements to investigators in this case. More than once, defendant admitted to detectives that he had intended to rape N. During his interview with Roth, defendant admitted that he wanted to "do the same" to N as he had to H.[8] George testified that he asked defendant if he "wanted to have sex [with] someone by force after stabbing her." Defendant answered, "Yep." Defendant added that he

---

[7] In order to prove aggravated murder under ORS 163.095(2)(d), the state sought to prove that defendant committed homicide while attempting to commit a first-degree felony sexual offense, ORS 163.115(1)(b)(H), specifically, rape, ORS 163.375.

[8] When asked why he did not rape N after he stabbed her, defendant said that N screamed too loud, so he ran away.

would have tried to rape N by either the golf cart, in between cars in the parking lot, or in nearby bushes.

When a party objects to the admission of other-acts evidence, the trial court follows the analysis set forth in *Baughman*. 361 Or at 404. The court must determine whether the proffered evidence is relevant for one or more of the nonpropensity purposes listed in OEC 404(3). *Id.* The burden is on the state to show that the evidence is relevant and probative of something other than the defendant's pre-disposition to do wrong. *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990). To justify the admission of other-acts evidence, the state must articulate the logical path it will ask the factfinder to follow. *Skillicorn*, 367 Or at 483. The logical path cannot depend upon intermediate or ultimate inferences about the defendant's character or whether defendant acted in accordance with that propensity. *Id.* at 482. If evidence *is* relevant for a nonpropensity purpose, then the trial court must also determine under OEC 403 whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. *Baughman*, 361 Or at 404-05.

We acknowledge that the state does not seek to admit evidence of defendant's prior conviction against defendant to prove the ultimate offenses that he murdered N and unlawfully used a weapon. Rather, the state offered the evidence of the assault and rape of H, a subsequent victim, as part of its proof that defendant intended to rape N. Therefore, we consider the state's theory that the particular challenged evidence of other acts are offered to show a motive to rape.

We have explained that evidence of motive is evidence that shows "a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act." *State v. Wright*, 283 Or App 160, 171, 387 P3d 405 (2016) (internal quotation marks omitted). Put more simply, evidence is relevant to show a defendant's motive if the other acts tend "to show *why* the defendant committed the charged crime." *State v. Davis*, 290 Or App 244, 252, 414 P3d 887 (2018) (emphasis in original).

There are different types of motive evidence. Edward J. Imwinkelried, 1 *Uncharged Misconduct Evidence* § 3:17 (2020). One type of motive evidence includes instances

where the other-acts evidence directly supplies the motive for the charged crime, amounting to a cause-and-effect relationship. *Id.* For example, an uncharged theft may provide a motive to murder the witness to the theft. *Id.* § 3:18; *see, e.g.*, *State v. Blanscet*, 230 Or App 363, 215 P3d 924 (2009) (assault was retaliation for victim "snitching" on defendant and helping convict him of previous crimes); *State v. Bracken*, 174 Or App 294, 23 P3d 417, *rev den*, 333 Or 162 (2001) (defendant's large marijuana growing operation was admissible to prove that he had a motive to murder a person who learned about it). Another type of motive evidence occurs when the other-acts and the charged crime are both "explainable as a result of the same motive." Imwinkelried, 1 *Uncharged Misconduct Evidence* § 3:17. For example, the same antipathy toward a victim, or like-victims, may motivate an assault of a victim and a later arson of the victim's property. Imwinkelried, 1 *Uncharged Misconduct Evidence* § 3:20; *see, e.g.*, *State v. Hagner*, 284 Or App 711, 721-22, 395 P3d 58, *rev den*, 361 Or 800 (2017) ("[T]he prior acts occurred so close in time to the shooting—one week and four days beforehand, respectively—that a jury could infer that defendant's hostility toward the victim persisted until the time of the shooting and also motivated that crime."); *see also State v. Moen*, 309 Or 45, 68, 786 P2d 331 (1990) ("[T]his court [has] recognized the relevancy of a defendant's prior hostile acts toward a homicide victim or toward a class of persons to which the victim belongs."); *cf. State v. Turnidge (S059155)*, 359 Or 364, 374 P3d 853 (2016), *cert den*, 137 S Ct 665, 196 L Ed 2d 554 (2017) (vehement, anti-government, anti-establishment, and anti-law-enforcement views as motive in bombing); *State v. Hayward*, 327 Or 397, 963 P2d 667 (1998) (satanic beliefs evident through prior actions). Such an ongoing motive may also help identify the defendant. Imwinkelried, 1 *Uncharged Misconduct Evidence* § 3:20.

No matter what sort of motive evidence is offered, the proponent must be able to show that the other-acts evidence furnishes or exemplifies the motive without relying on impermissible character inferences. *See Skillicorn*, 367 Or at 477. We have defined impermissible evidence of a defendant's "character" to be evidence that shows only a person's

"tendency to act in a certain way in all the varying situations of life." *Davis*, 290 Or App at 251 (internal quotation marks omitted).

The line that distinguishes motive evidence from propensity evidence may be subtle. Even if proffered evidence might seem to show why a defendant was motivated to commit the charged crime, that evidence is not admissible if the necessary link in the proponent's chain of logical relevance relies on an inference relating to a person's character or propensities. *See Skillicorn*, 367 Or at 477. Therefore, when admitting evidence under a motive theory of relevance, "courts must be on guard to prevent the motive label from being used to smuggle" such "forbidden evidence of propensity to the jury." *State v. Hampton*, 317 Or 251, 257 n 12, 855 P2d 621 (1993) (internal quotation marks omitted).

In this case, the state's primary argument relies on the latter form of motive evidence where both the other act and the charged crime are alleged to be the result of the same continuous motive. The state argues that defendant's confessions that he wanted to rape N, as he later raped H, establish a permissible connecting link between the charged murder and the other acts. In the state's view, defendant's confessions are positive or direct evidence that links the two sets of crimes without need to rely on a propensity inference to connect the two sets of offenses. Because, according to the state, there is direct evidence of a common motive and no need for a mere inference of propensity to connect them, the state concludes that this case is distinguishable from other cases, like *Davis* and *State v. Garrett*, 350 Or 1, 9, 248 P3d 965 (2011), where nothing linked the charged crimes and the other acts—except for an inference of propensity. *See Davis*, 290 Or App at 254.

In *Davis*, the charged offense at issue was attempted sexual assault of the victim, and the other-acts evidence was that, at other times, the defendant had left notes for two other women, suggesting a desire to engage in violent sexual acts. 290 Or App at 246-48. Other than the notes, however, there was no evidence showing that the defendant, in the event at issue, had attacked the victim and pushed her into a ditch for a sexual purpose. The state's theory was

that the victim fought off the defendant before the sexual purpose was made known. The only logical connection to be made between the charged offense and the notes to other women would be to assume from the notes an inference that the defendant had a general desire for violent sexual gratification—a character trait. *Id.* at 255. We determined that the logical link between the charged offense and other acts was an impermissible character inference. *Id.* at 255-56.

In *Garrett*, the defendant was charged with counts of murder in a home invasion. 350 Or at 3. The trial court suppressed evidence of a subsequent home invasion. *Id.* at 5. The Supreme Court determined that evidence of the defendant's subsequent burglary and attack of another victim was impermissible character evidence under OEC 404(3) because there was no evidence in the circumstances of the charged offense suggesting that the defendant intended to burglarize the victim, as happened in the other home invasion. 350 Or at 9-11. In particular, there was no evidence tending to show that anything was missing from the murder victim's house and no admission from the defendant that he had intended to burglarize the victim. *Id.* at 9. As a consequence, the court determined that there was no logical relevance between the motive for the proffered other acts and the charged offense—other than an impermissible inference of a propensity to engage in crime. *Id.*

Unlike *Garrett* and *Davis*, we recognize that, in this case, the state has direct evidence—*i.e.,* defendant's confessions—to show that defendant's motive in the attacks on H and on N were to sexually assault the victims. Here, there is direct evidence to show that the motive would seem, at least in part, to be of the same sort in the charged offenses and the other offenses. Therefore, at the point where *Garrett* and *Davis* stopped, our analysis must go on.

We must go on to examine the fact-specific circumstances to consider whether the apparent link between the charged offenses—the murder of N—and the other acts—the assault and rape of H—necessitate impermissible reliance on propensity or character. We accept that defendant admitted, as he said, that his motives on both occasions were "the

same." There is evidence from which to conclude that his motives when attacking H and N were to rape both victims.[9] The confessions, however, do not end our analysis under OEC 404(3) if the intermediate or ultimate inferences required to connect defendant's motives for the charged murder and the other acts still depend upon character-based logic.

We conclude that, absent additional evidence, an inference of propensity is required to connect the motive to attack N in contemplation of rape and the motive to sexually attack H thereafter. That is because the presence of the "same" ongoing motive cannot be assumed simply from the occurrence of similar offenses with similar motives at different times. The state assumes that defendant maintained or sustained the same, undifferentiated, uninterrupted, continuous, single desire to sexually assault any isolated woman, whether it be N or H. It is an assumption that defendant sustained the same single motive over a significant period of time—25 days—from August into September 2014. That assumption cannot go unquestioned.

That sort of single, ongoing "purpose" has been acknowledged as a unique potential in cases of sexual abuse of children. *See State v. Williams*, 357 Or 1, 17-24, 346 P3d 455 (2015) (despite other-acts objection, affirming admission of children's underwear to show defendant's purpose—a sexual interest in little children). Similarly, in *State v. McKay*, 309 Or 305, 308, 787 P2d 479 (1990), prior sexual touching between the defendant and the same child were held admissible "to show the sexual inclination of defendant towards the same victim, not that he had a character trait or propensity to engage in sexual misconduct generally." There is, however, no precedent for simply *assuming* that evidence of defendant's motive at the time of the charged offense was the same, ongoing motive in the sexual assault of a different adult on a different occasion 25 days later. *See State v. Levasseur*, 309 Or App 745, 752-53, 483 P3d 1167 (2021) (evidence of two prior assaults on other victims held inadmissible).

---

[9] Defendant admitted the same sort of motive arose on two separate occasions, but he did not say more to link the recurrence of those motives or events.

The fact that the same sort of "motive" may seem to reoccur in the charged offense and in other acts does not necessarily mean that the same motive was ongoing so as to animate both wrongs. At least on this record, without more, this situation is not like one involving an ongoing motive of antipathy toward the same victim.[10] *See* Imwinkelried, 1 *Uncharged Misconduct Evidence* § 3:20; *Hagner*, 284 Or App at 721-22 (continued hostility toward wife); *see also Hayward*, 327 Or 397 (ongoing attitude evident through actions); *cf. Turnidge*, 359 Or 364 (ongoing attitude in prior acts and bombing).

Put another way, the motive to steal one day and the motive to steal a month later might both be said to be animated by the same "motive to steal," but, in the absence of additional evidence of a link, the separate *acts* of theft do not necessarily result from the same, continuous motive, and the *motives* for those acts are not necessarily the same, ongoing motive. To assume, without something more, that separate thefts result from the same, continuous motive is just another way to think, "once a thief, always a thief." *Cf. State v. Treit*, 29 Or App 461, 465, 564 P2d 708 (1977) (reversing for improper closing argument, observing that "it is hard to believe that none of the jurors gave any thought to the maxim, 'Once a thief, always a thief.'") To assume one continuous motive, without additional objective evidence implicitly relies on an impermissible inference of character or propensity.[11] *See Wright*, 283 Or App at 174 ("Evidence of a defendant's motive for committing a prior act is not admissible to prove the defendant's motive in committing a later act when the possibility that the same motive caused both acts is, as in *Garrett*, 'mere conjecture.'" (Quoting *Garrett*, 350 Or at 9.)).

---

[10] If explanatory evidence were offered to show that the same kind of motives for separate acts were indeed the same, continuous motive, then that explanatory evidence could be examined to determine whether it involves impermissible character-based reasoning.

[11] That is why the limiting instruction given here does not cure the problem of propensity. To instruct that other acts may be considered only for purpose of motive or intent does not avoid the problem if propensity is the implicit link between recurrence of merely the same sort of motives for separate acts at different times that are not, in fact, the same, continuous underlying motive for separate acts. The limiting instruction does not address the problem presented here.

For that reason, we conclude that, in this case, the inference that would have linked the particular challenged descriptive evidence of other acts—the victim photographs and witnesses' testimony offered to show an ongoing desire for violent sexual gratification—depended upon impermissible character-based reasoning. *See Skillicorn*, 367 Or at 477 (evidence inadmissible if the logical link with proffered evidence is propensity). The conclusion cannot be avoided by shifting the argument from similar acts to similar "motives to act." Defendant's objections to the admission of evidence of the circumstances of the other acts should have been sustained.[12]

Reversed and remanded.

---

[12] *See* 311 Or App at 299 n 4. Because the matters were not presented on appeal, we express no opinion on the admissibility of the record of the conviction for other acts or defendant's statements about the charged and other offenses. Although the trial court ruled on such matters, we do not.